**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BARTON CICERO, on behalf of himself and        :
others similarly situated,                     :
                                               :   Case No. 1:25-cv-_____
        Plaintiff,                             :
                                               :   **DEMAND FOR JURY TRIAL**
v.                                             :
                                               :   **DECLARATORY AND PERMANENT**
SEGWAY INC., a Delaware company.               :   **INJUNCTIVE RELIEF AND**
                                               :   **DAMAGES REQUESTED**
        Defendant.                             :
                                               :
                                               :
                                               :
_____/

**CLASS ACTION COMPLAINT**

Plaintiff, Barton Cicero ("Plaintiff"), individually and on behalf of all others similarly

situated, brings this action against Defendant, Segway Inc. ("Defendant"). Plaintiff's allegations

as to Plaintiff's own actions are based on personal knowledge.  The other allegations are based on

counsel's investigation, and information and belief.

**NATURE OF ACTION**

1.      This case concerns a deceptively dangerous product and its manufacturer's

inadequate recall efforts.  After selling roughly 220,000 of its popular Segway Ninebot Max G30P

and Max G30LP KickScooters, Defendant announced a nationwide recall instructing its customers

to stop using them because the folding mechanism can fail and cause the handlebars or stem to

fold while the scooter is in use, posing a fall hazard to consumers.  Scores of consumers have been

injured, as the defect causes the Products to effectively collapse on themselves when consumers

are going roughly twenty miles per hour, launching customers into traffic and the pavement.  Like

Plaintiff, customers have routinely ended up in emergency rooms around the country.  And yet,

Defendant refuses to refund its customers a single cent.  This is a case of protecting the bottom line at all costs.

2.    On March 20, 2025, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 220,000 Segway Ninebot Max G30P and Max G30LP KickScooters (the "Products").[1]  Consumers were warned to "immediately stop using the recalled scooters" because the Products' "folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers."  Defendant stated that it had received "68 reports of folding mechanism failures, including 20 injuries to include abrasions, bruises, lacerations and broken bones." The potential of the Products' folding mechanism to fail and cause the handlebars or stem to fold while the scooter is in use is referred to herein as the "Defect."

3.    Defendant refuses to refund customers that purchased the Products.  Further, Defendant explicitly states that "[n]o returns or replacements are involved."[2]  Instead, Defendant implemented a deficient recall that allows it to *say* they are doing the right thing, when in fact the primary objective is to protect their bottom line.

4.    Any requests for refunds, returns, or replacements are denied.  Consumers only have one option: to stop using the Products, contact Defendant for a "maintenance kit," wait for the maintenance kit to arrive, and then follow complex and confusing instructions to purportedly fix the issue and then routinely monitor their Products to make sure that their Products do not snap or collapse on any given day.  Consumers did not bargain for an expensive e-scooter that could collapse, causing users to be flung from the e-scooter at full speed without notice unless they

---

[1]https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-Max-G30P-and-Max-G30LP-KickScooters-Due-to-Fall-Hazard-and-Risk-of-Serious-Injury.

[2] https://service.segway.com/us-en/g30RecallNotice

personally performed routine maintenance that they are not competent to perform and that is unlikely to fix the defect.

5.    By design, the recall received very little publication, with the result that the response rate has been low. And, a refusal to offer refunds, replacements, returns, or fixes by the manufacturer or an authorized mechanic guarantees that customers who have lost faith in Defendant's products, or who do not want to risk being tossed at full speed onto the pavement, are left with no recourse.  Further, consumers whose Products were discarded or damaged beyond repair through the manifestation of the Defendant are also left without recourse.  This approach benefits Defendant by minimizing the cost and burden of the recall.

6.    Plaintiff is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## **PARTIES**

7.    Plaintiff Barton Cicero is a Boston, Massachusetts resident. Plaintiff Cicero purchased a Segway Ninebot Max G30P that is part of the March 20, 2025 CPSC Recall online from Amazon.com on April 17, 2023 for $699.99.  The Product has the following serial number: N4GSB2224C1545.  Plaintiff Cicero is referred to herein as the Massachusetts Plaintiff.

8.    Plaintiff Cicero is an experienced motorcycle rider, and was very competent in driving his Segway Ninebot Max G30P.  Plaintiff Cicero has always maintained and took care of the Segway Ninebot Max G30P to ensure that it was in good working condition.  On February 1, 2025, the Defect manifested when Plaintiff Cicero was driving his Segway Ninebot Max G30P.

The stem folded and collapsed while Plaintiff Cicero was driving the scooter, causing Plaintiff to fall violently to the ground, resulting in a dislocated shoulder, torn rotator cuff, and a fractured shoulder.  The scooter appeared to be broken beyond repair as a result of the incident.  Due to the severity of his injuries, Plaintiff immediately went to the emergency room and left the scooter at the scene, as it was no longer operable and he was not in a position to move it or dispose of it.  When Plaintiff later returned to the scene, the scooter was gone.

9.      Before purchasing the Product, Plaintiff reviewed the Products' item details, descriptions, product specifications and features.  The Products' descriptions on Amazon.com advertised the Products as purportedly safe, reliable, providing a smooth ride, and durable, which Plaintiff relied on when purchased the Product, and which became the basis of the bargain.  Neither the Products' packaging, labeling, or any other information surrounding the Product on Amazon.com disclosed or suggested in any way that the Product contained the Defect.  If the Product's labeling, packaging, or web content had disclosed the Defect, then Plaintiff would not have purchased the Product, or would not have purchased the Product on the same terms.  If the Product's labeling, packaging, or web content did not advertise the Products as safe, reliable, providing a smooth ride, and durable, Plaintiff would not have purchased the Product, or would not have purchased the Product on the same terms.

10.     Defendant Segway Inc. is a Delaware corporation, with its registered agent located in Wilmington, Delaware.  Segway's United States headquarters are in Arcadia, California.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class

are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendant.

12.    This Court has general jurisdiction over Defendant because it is incorporated in Delaware. Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within Delaware such that Defendant has significant, continuous, and pervasive contacts with the State of Delaware.

13.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is incorporated in this District and is subject to the Court's personal jurisdiction with respect to this action.

**FACTUAL ALLEGATIONS**

14.    **Product at issue:**  the Segway Ninebot Max G30P and Max G30LP KickScooters at issue in this case were sold nationwide at major retailers like Best Buy, Costco, Walmart, Target, and Sum's Club and other stores, and online at Amazon.com and Segway.com from January 2020 through February 2025 for between $600 to $1,000.  There were approximately 220,000 units sold during this period in the United States.  According to Defendant, serial numbers for affected units start with "N4GN" or "N4GS,"[3] though Plaintiff believes that substantially identical e-scotters sold by Defendant suffer from the identical Defect in additional model ranges, such as those starting with "NAON." The following is a photo of the Products.



G30P          G30LP

---

[3] https://service.segway.com/us-en/recall

15. **Defect at issue:** As stated by Defendant: "The folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers."

16. The Defect affects all of the Products at issue. Defendant and the CPSC have stated that "[c]onsumers should immediately stop using the recalled scooters."

17. The cause of the Defect is the same for all of the products at issue.

18. **Relevant time period:** All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times while the Products were sold between January 2020 and February 2025. There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

19. **The omissions and misrepresentations:** Defendant described the Products as high-end electronic scooters, with a powerful electric motor, capable of going up to roughly 19 miles per hour, that are perfect for commuting, adventure rides, and everyday fun. The Products were advertised with safety features like front and rear disc brakes, a dual adjustable hydraulic suspension, self-sealing tires, and slip resistance. They were marketed as steady and safe, providing a smooth ride that was supposed to be comfortable on various terrains, reliable, and durable. These representations were made everywhere the Products were sold, including on Amazon.com, Segway.com, and on the Products packaging in brick and mortar stores. However, these representations were false and misleading, as the Product were not safe, durable, or reliable due to the Defect. Defendant failed to disclose that "The folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers." There is no warning of any kind anywhere on the Products' labels, on websites where the Products are sold, or the Products themselves.

20.     The omission and misrepresentations pertain to an unreasonable safety hazard that reasonable consumers consider to be material.

21.     Plaintiff and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

22.     Defendant did not disclose the Defect on the product packaging or labeling or any other customer-facing document or display. Retailers' sales personnel and customer service representatives did not disclose the Defect either.

23.     At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the Products were defective. Defendant had exclusive knowledge of that fact.

24.     Defendant made partial representations to Plaintiff and class members, while suppressing the safety defect. Specifically, Defendant marketed the Products as safe, reliable, and durable, while knowing that those representations were not true and failing to disclose the Defect.

25.     **Defendant's Pre-sale Knowledge of the Defect**:  Defendant was aware of the defect at the time of sale.

26.     Before the products were first launched, Defendant knew about the defect as a result of pre-release testing.

27.     After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence. Defendant knew that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

28.    Defendant also monitored and would have known about consumer complaints to the CPSC.  When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adheres to that practice.

29.    Here, Defendant waited until it received at least 68 reports of folding mechanism failures, including 20 injuries, including abrasions, bruises, lacerations and broken bones, before issuing its Recall.

30.    **No Adequate Remedy At Law:**

31.    Plaintiff and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

32.    Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

33.    Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

34.    Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

35.     Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

36.     In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

37.     **The Recall Does Not Render This Lawsuit Moot:**

38.     The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

39.     Under the recall, Defendant is not providing any refunds or replacement to any class members, or offering to fix the Defect itself.  Instead, it is only providing a "maintenance kit" for those class members that submit a request.  These options are not viable for people like Plaintiff who no longer trust the reliability of Defendant's products and do not wish to continue to do business with them, or those that do not feel safe or capable of fixing and properly maintaining the Product themselves with the threat of potential death or serious injury if they were to not properly fix or maintain the Products.  Further, because of the Defect, Plaintiff's unit was beyond repair and was forced to be abandoned when he went to the emergency room, meaning that a maintenance kit provides him with no benefit whatsoever.

40.     Massachusetts Gen. Laws Chapter 93A entitles consumers to statutory damages of $25, and triple actual damages with reasonable attorneys fees and costs.  These are far greater than what is provided by the Recall, which is limited to a replacement of parts and no cash.

41.     The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

9

## FACTUAL ALLEGATIONS

42.     *Class Definition***:** As authorized by Fed. R. Civ. P. 23(b)(2) or (b)(4), Plaintiff brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

    a.   <u>Nationwide Class</u>: all people in the United States who purchased one of the Products.

    b.   <u>Multi-State Implied Warranty Class</u>: all persons who purchased a subject Product for personal, family, or household use: (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

    c.   <u>Multi-State Consumer Protection Class</u>: all persons who purchased a subject Product for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

    d.   <u>Massachusetts Subclass</u>: all people who purchased a subject Product in Massachusetts.

43. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

44. Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

45. *Numerosity.* Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its retailers, their agents, or other means.

46. *Commonality and Predominance*. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

  a. Whether Defendant knew or should have known of the Defect at issue in this case, and if so, when it discovered the Defect;

  b. Whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

c.    Whether Defendant failed to disclose and concealed the existence of the Defect from potential customers;

d.    Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

47.    *Typicality.* Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that the products at issue here can be dangerous.

48.    *Adequacy of Representation*. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

49.    *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

50.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## FIRST CAUSE OF ACTION
### Violations of the Mass. Gen. Laws Chapter 93A, § 2

51.     Plaintiff repeats the prior allegations of this Complaint from paragraphs 1-50 and incorporates them by reference herein.

52.     Plaintiff brings this cause of action individually and on behalf all other class members in the Massachusetts Subclass.

53.     Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

54.     Plaintiff, members of the Massachusetts Subclass, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

55.     Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

56.     The Products constitute property under Mass. Gen. Laws Ch. 93A.

57.     Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

      a.   Misrepresenting the approval or certification of goods;

      b.   Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

      c.   Representing that goods are of a particular standard, quality, or grade, if they are of another;

      d.   Advertising goods with intent not to sell them as advertised;

      e.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

13

f. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

g. Representing that goods have been supplied in accordance with a previous representation when they have not been.

58. Defendant knew, should have known, or was reckless in not knowing, that the Class Vehicles were defective.

59. Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold mislabeled Products.

60. Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

61. Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Class members.

62. Plaintiff and the members of the Massachusetts Subclass have suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, *inter alia*, they lost money when they purchased the Products and/or paid an inflated purchase price for them.

63. Defendant had a duty to disclose the defect at issue here because Defendant had knowledge of the true facts related to the Products before marketing and selling them.

64. As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the members of the Massachusetts Subclass have incurred damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

65. Plaintiff and the members of the Massachusetts Subclass have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

66. Plaintiff seeks all available relief under this cause of action.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

67. Plaintiff repeats the prior allegations of this Complaint from paragraphs 1-50 and incorporates them by reference herein.

68. Plaintiff bring this cause of action individually and on behalf all other Class Members.

69. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

70. The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

71. Plaintiff and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiff and Class Members paid to Defendant.

72. Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

15

73.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were dangerous. This caused injuries to Plaintiff and class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

74.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

75.    Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

76.    Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

77.    As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered in an amount to be proven at trial.

78.    Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

79.    Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

### THIRD CAUSE OF ACTION
**Fraud by Omission / Intentional Misrepresentation**

80.    Plaintiff repeats the prior allegations of this Complaint from paragraphs 1-50 and incorporates them by reference herein.

81.     Plaintiff brings this cause of action individually and on behalf all other Class Members.

82.     This claim is based on fraudulent omissions and misrepresentations concerning the safety, reliability, and durability of the Products. As discussed above, Defendant failed to disclose that the Products had a dangerous defect, while advertising that the Products were safe, reliable, and durable.

83.     The false and misleading omissions and misrepresentations were made with knowledge of their falsehood. Defendant is a nationwide manufacturer and distributor, routinely undergoes product testing, and must have known about the Defect prior to sale. Nonetheless, Defendant continued to sell its defective Products to unsuspecting consumers.

84.     The false and misleading omissions and misrepresentations were made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class Members to purchase the Products.

85.     The fraudulent actions of Defendant caused damage to Plaintiff and Class Members, who are entitled to damages and punitive damages.

86.     Plaintiff seeks all relief available under this cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, prays for the following relief:

A.     Certification of the proposed classes;

B.     Appointment of Plaintiff as representative of the classes;

C.     Appointment of undersigned counsel as counsel for the classes;

17

D.      A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

E.      For an order finding in favor of Plaintiff and class members on all counts asserted herein;

F.      For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiff and the class members, including, inter alia, an order prohibiting Defendant from engaging in the unlawful acts described above;

G.      For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H.      For prejudgment interest on all amounts awarded;

I.      For an order of restitution and all other forms of equitable monetary relief;

J.      For an order awarding Plaintiff and class members their reasonable attorney fees, expenses, and costs of suit.

K.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: March 25, 2025

Respectfully  submitted,

*/s/ R. Grant Dick IV*

R. Grant Dick IV (#5123)
Kevin D. Levitsky (#7228)
COOCH AND TAYLOR P.A.
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3800
E-Mail:  gdick@coochtaylor.com
          klevitsky@coochtaylor.com


Yeremey O. Krivoshey (Cal. SBN 295032)
SMITH KRIVOSHEY, PC
(*pro hac vice* forthcoming)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

Joel D. Smith (Cal. SBN 95598)
SMITH KRIVOSHEY, PC
(*pro hac vice* forthcoming)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

19