**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE SEGWAY SCOOTER RECALL LITIGATION | : | C.A. No. 25-cv-00369-GBW |
| | : | CONSOLIDATED |
| | : | |
| | : | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| | : | |
| | : | **DAMAGES REQUESTED** |

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs, Barton Cicero, Aaron John Sabu, Christopher Holmes, Mary Rzewuski and Edward Steven Heymer ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant, Segway Inc. ("Defendant" or "Segway").

**NATURE OF ACTION**

1.      This case concerns Defendant's deceptively dangerous product and its inadequate recall efforts.  After selling roughly 220,000 of its popular Segway Ninebot Max G30P and Max G30LP KickScooters, Defendant announced a nationwide recall instructing its customers to stop using them because of a dangerous defect. The folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers.  Scores of consumers have been injured, as the defect causes the scooters to effectively collapse on themselves when consumers are going roughly twenty miles per hour, launching customers into traffic and the pavement.  Like some of the Plaintiffs, customers have routinely ended up in emergency rooms around the country.  And yet, Defendant refuses to refund its customers a single cent.  This is a case of Defendant protecting its bottom line at all costs.

2.      On March 20, 2025, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 220,000 Segway Ninebot Max G30P and Max G30LP

KickScooters ("Products").[1]  Consumers were warned to "immediately stop using the recalled scooters" because the Products' "folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers."[2]  Defendant stated that it had received "68 reports of folding mechanism failures, including 20 injuries to include abrasions, bruises, lacerations and broken bones."[3] The potential of the Products' folding mechanism to fail and cause the handlebars or stem to fold while the scooter is in use is referred to herein as the "Defect."

3.      Defendant explicitly states that "[n]o returns or replacements are involved," and has been clear that it refuses to refund customers who purchased the defective Products.[4]  Instead, Defendant chose to implement a deficient recall that allows it to *say* it is doing the right thing, when in fact the primary objective is to protect its bottom line.

4.      Any requests for refunds, returns, or replacements are denied.  Consumers only have one option: stop using the Products, contact Defendant for a "maintenance kit," wait for the maintenance kit to arrive, follow complex and confusing instructions to purportedly fix the Defect, and then routinely monitor their Products to make sure that their Products don't snap on any given day.  Consumers did not bargain for an expensive e-scooter that could collapse and fling them off at full speed without notice unless they personally performed maintenance that they are not competent or confident enough to perform and that is unlikely to fix the Defect.

5.      Defendant's policy also is a direct violation of section 1793.2 of the Song-Berverly Consumer Warranty Act, which prohibits manufacturers like Defendant from requiring consumers to perform their own repairs while a product is still under warranty.

---

[1]https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-Max-G30P-and-Max-G30LP-KickScooters-Due-to-Fall-Hazard-and-Risk-of-Serious-Injury (last accessed October 22, 2025).
[2] *Id.*
[3] *Id.*
[4] *See* https://service.segway.com/us-en/g30RecallNotice (last accessed October 22, 2025).

6.    By design, the recall received very little publication,  resulting in a low response rate. And, Defendant's refusal to offer refunds, replacements, returns, or fixes guarantees that customers who have lost faith in Defendant's products, or who do not want to risk being tossed at full speed into the pavement, are left with no recourse.  Further, consumers whose Products were discarded or damaged beyond repair through the manifestation of the Defect are also left without recourse.  This approach benefits Defendant by minimizing the cost and burden of the recall.

7.    Plaintiffs bring this class action lawsuit to seek all available relief for consumers who purchased the Products, to raise awareness that Defendant's Products are hazardous, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## **PARTIES**

8.    Plaintiff Barton Cicero is a Boston, Massachusetts resident and is domiciled in Massachusetts. Plaintiff Cicero purchased a Segway Ninebot Max G30P that is part of the March 20, 2025 CPSC recall online from Amazon.com on April 17, 2023 for $699.99. The Product has the following serial number: N4GSB2224C1545.  Plaintiff Cicero is referred to herein as the Massachusetts Plaintiff.

9.    Plaintiff Cicero is an experienced motorcycle rider and was very competent in driving his Segway Ninebot Max G30P.  Plaintiff Cicero has always maintained and took care of the Segway Ninebot Max G30P to ensure that it was in good working condition.  On February 1, 2025, the Defect manifested when Plaintiff Cicero was driving his Segway Ninebot Max G30P. The stem folded and collapsed while Plaintiff Cicero was driving the scooter, causing Plaintiff to

fall violently to the ground, resulting in a dislocated shoulder, a torn rotator cuff, and a fractured shoulder. The Product appeared to be broken beyond repair as a result of the incident. Due to the severity of his injuries, Plaintiff Cicero immediately went to the emergency room and left the Product at the scene, as it was no longer operable and he was not in a position to move it or dispose of it. When Plaintiff Cicero later returned to the scene, the Product was gone.

10.     Plaintiff Aaron John Sabu is a Los Angeles, California resident and is domiciled in California. Plaintiff John Sabu purchased a Segway Ninebot Max G30P that is part of the March 20, 2025 CPSC recall online from Amazon.com on June 29, 2024. The Product has the following serial number: N4GSS2334E0078. Plaintiff John Sabu and Plaintiff Heymer, identified below, are referred to herein as the California Plaintiffs.

11.     Plaintiff John Sabu has experienced the Defect at least two times within the couple of months prior to filing this action. The stem folded and collapsed while Plaintiff John Sabu was driving the scooter. Plaintiff John Sabu is an experienced rider, and the manifestation of the Defect was not a result of user error.

12.     Plaintiff Christopher Holmes is a Woodside, New York resident and is domiciled in New York. Plaintiff Holmes purchased a Segway Ninebot Max G30P that is part of the March 20, 2025 CPSC recall online at academy.com on June 30, 2021. The Product has the following serial number: N4GSD2128K4134. Plaintiff Holmes is referred to herein as the New York Plaintiff.

13.     Plaintiff Holmes experienced the Defect when, on February 13, 2025, the stem folded and collapsed while Plaintiff Holmes was driving at around 19 miles per hour. The Defect caused Plaintiff Holmes to flip over and smash his face into the pavement, causing fractures around the eye socket, jaw, and his wrist. A random passerby called 9-1-1. Plaintiff Holmes was taken

4

to the hospital by ambulance.  The scooter was left at the scene, and was apparently removed by an unknown person.  Plaintiff Holmes is an experienced rider, and the manifestation of the Defect was not the result of user error.

14.    Plaintiff Mary Rzewuski is a Cicero, Illinois resident and is domiciled in Illinois. In or around January 1, 2025, Plaintiff Rzewuski purchased a Segway Ninebot Max G30P from a Best Buy located in Bloomingdale, Illinois for approximately $599.99 pre-tax. The Product has the following serial number:N4GSX2431C0290. Upon learning of the recall, Plaintiff Rzewuski attempted to get a refund for the Product from Best Buy and from Defendant, but neither Defendant nor Best Buy would refund the defective Product. Plaintiff Rzewuski is referenced herein as the Illinois Plaintiff.

15.    Plaintiff Edward Steven Heymer is a Murrieta, California resident and is domiciled in California. In or around August 7, 2022, Plaintiff Heymer purchased a Segway Ninebot MAX G30LP online from Best Buy for approximately $799.99. The Product has the following serial number: N4GND2149K1356. Plaintiff Heymer and Plaintiff John Sabu are collectively referenced herein as the California Plaintiffs.

16.    Before purchasing the Product, Plaintiffs reviewed the Products' item details, descriptions, product specifications and features.  The Products' descriptions on Amazon.com and Academy.com, and at Best Buy, advertised the Products as purportedly safe, reliable, providing a smooth ride, and durable, which Plaintiffs relied on when purchased the Products, and which became the basis of the bargain.  Neither the Products' packaging, labeling, or any other information surrounding the Products on Amazon.com or Academy.com or at Best Buy disclosed or suggested in any way that the Products contained the Defect.  If the Products' labeling, packaging, or online marketing did not advertise the Products as safe, reliable, providing a smooth

ride, and durable, Plaintiffs would not have purchased the Products, or would not have purchased the Products on the same terms.

17.    None of the Plaintiffs have been able to use the Products since the recall due to the Defect, rendering the Products worthless.

18.    Defendant Segway Inc. is a Delaware corporation, with its registered agent located in Wilmington, Delaware.  Segway's United States headquarters and principal place of business were formerly in Acadia, California during the class period, but are currently in Texas.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendant.

20.    This Court has general jurisdiction over Defendant because it is incorporated in Delaware. Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within Delaware such that Defendant has significant, continuous, and pervasive contacts with the State of Delaware.

21.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is incorporated in this District and is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

22.    **Product at issue:**  Segway Ninebot Max G30P and Max G30LP KickScooters  sold nationwide at major retailers like Best Buy, Costco, Walmart, Target, and Sum's Club and other stores, and online at Amazon.com, Academy.com and Segway.com from January 2020 through February 2025 for between $600 to $1,000.  Approximately 220,000 units were sold during this

6

period in the United States.  According to Defendant, serial numbers for affected units start with "N4GN" or "N4GS,"[5] though Plaintiffs believe that substantially identical e-scooters in additional model ranges, such as those starting with "NAON," sold by Defendant also suffer from the identical Defect. The following is a photo of the Products.



23.    **Defect at issue:**  As stated by Defendant, "The folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers."

24.    The Defect affects all of the Products at issue. Defendant and the CPSC have stated that "[c]onsumers should immediately stop using the recalled scooters."  Thus, by Defendant's own admission in the recall notice, the Products have been rendered entirely worthless as sold because they cannot be safely used.

25.    The cause of the Defect is the same for all of the Products at issue.

26.    **Relevant time period:**  All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times while the Products were sold between January 2020 and February 2025.  There have been no material changes to the Product packaging or other consumer-facing materials during the relevant period.

---

[5] https://service.segway.com/us-en/recall (last accessed October 22, 2025).

27.    **The omissions and misrepresentations:** Defendant described the Products as high-end electronic scooters, with a powerful electric motor, capable of going up to roughly 19 miles per hour, that are perfect for commuting, adventure rides, and everyday fun.  Defendant advertised the Products with safety features like front and rear disc brakes, a dual adjustable hydraulic suspension, self-sealing tires, and slip resistance.  Defendant marketed the Products as steady and safe, while providing a smooth ride that was supposed to be comfortable on various terrains, reliable, and durable.  These representations were made everywhere the Products were sold, including on Amazon.com, Segway.com, and on the Products' packaging in brick-and-mortar stores like Best Buy.  However, Defendant's representations about these Products were false and misleading, as the Products were not safe, durable, or reliable due to the Defect.  Defendant failed to disclose that "The folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers."  There is no warning of any kind located anywhere on the Products' labels, on websites where the Products are sold, or on the Products themselves.

28.    The omissions and misrepresentations pertain to an unreasonable safety hazard that reasonable consumers consider to be material.

29.    Plaintiffs and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

30.    Defendant failed to disclose the Defect on the Product packaging, labeling, or any other customer-facing document or display. Retailers' sales personnel and customer service representatives did not disclose the Defect either.

31.     At the time of purchase, Plaintiffs and class members did not know, and did not have reason to know, that the Products were defective. Defendant possessed exclusive knowledge of that fact.

32.     Defendant made partial representations to Plaintiffs and class members while suppressing the safety Defect. Specifically, Defendant marketed the Products as safe, reliable, and durable, while knowing that those representations were not true and failing to disclose the Defect.

33.     **Defendant's Pre-sale Knowledge of the Defect**:  Defendant was aware of the Defect at the time of sale.

34.     Before the products were first launched, Defendant knew about the Defect as a result of pre-release testing.

35.     After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence. Defendant knew that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

36.     Defendant also monitored and would have known about consumer complaints concerning the Products that were made to the CPSC.  When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers.  Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adheres to that practice.

37.     Here, Defendant waited until after it received more than 65 reports of folding mechanism failures in the Products, resulting in at least 20 injuries, including abrasions, bruises, lacerations and broken bones, before issuing its recall.

38.     The Defect also affected early versions of Defendant's scooters with substantially similar designs, making Defendant aware that the design of the Products here posed the same Defect and safety concerns. For instance, a review submitted to the CPSC dated July 13, 2021 concerning a Segway Ninebot scooter sold on June 24, 2020 reported substantially the same defect. The user stated that "[t]he top half of the scooter sheared off from the bottom," leading the user to fall to the ground and suffer injuries.[6] Another user reported to the CPSC on December 13, 2021 that their Segway Ninebot scooter sold on June 7, 2021 likewise possessed substantially the same defect. This user reported that the scooter's folding/locking mechanism failed, causing the scooter to collapse and flinging the user to the ground.[7] This user also contacted Defendant directly and returned the affected scooter for evaluation. The folding mechanism on the Segway Ninebot scooter at issue in these 2021 CPSC reports is effectively identical to the folding mechanism in the Products at issue here, placing Defendant on notice of the Defect and giving Defendant direct knowledge of the safety risks associated with this Defect.

39.     Further, about a half year prior to the March 20, 2025 recall of the Products, Segway implemented a separate recall of similar Segway Ninebot scooters because the front fork, which is roughly in the same position as the folding mechanism of the Products, had a tendency to break, causing fall and injury hazards.[8] At the time, Segway had received at least 31 reports of broken front forks prior to instituting the recall. The incidents and reports associated with this prior recall

---

[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3383241 (last accessed October 22, 2025).
[7] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3526094 (last accessed October 22, 2025).
[8] https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-P100-KickScooters-Due-to-Fall-and-Injury-Hazards (last accessed October 22, 2025).

also placed Defendant on notice of the Defect, considering that all of the affected scooters suffered from failure just above the front wheel causing collapse of the scooter.

40.    The similarity of complaints demonstrated to Defendant that the complaints were not anomalous incidents or the result of user error, but instead the result of a systemic defect in the Products.

41.    Defendant knew with certainty that the defect would manifest, or alternatively, was willfully blind to the existence of the Defect, which is legally equivalent to knowledge.

42.    **No Adequate Remedy At Law:**  Plaintiffs and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

43.    Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

44.    Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs are unable to sufficiently adduce evidence to support an award of damages.

45.    Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

46.    Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

47.     In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

48.     **The Recall Does Not Render This Lawsuit Moot:**  The recall does not render this lawsuit moot because the recall fails to provide all of the same relief available in this lawsuit.

49.     Under the recall, Defendant refuses to provide consumers with any refunds or replacements and fails to offer to fix the Defect itself.  Instead, it is only providing a "maintenance kit" for those consumers that submit a request.  These options are not viable for people like Plaintiffs who no longer trust the reliability of Defendant's Products and do not wish to continue to do business with it, or those consumers who do not feel safe or capable of properly fixing and maintaining the Products themselves given the threat of potential death or serious injury if not properly fixed or maintained.  Further, as a direct result of the Defect, some of the Plaintiffs' Products were beyond repair, abandoned, or thrown out when the Products broke, meaning that a maintenance kit provides theses consumers with no relief whatsoever.

50.     For Californians, the limitations imposed by Defendant's recall policy is a direct violation of the Song-Beverly Consumer Warranty Act, which prohibits foisting the responsibility of making repairs on customers who may or may not have the aptitude, tools, or time to make such repairs.

51.     Massachusetts Gen. Laws Chapter 93A entitles consumers to statutory damages of $25 and triple actual damages with reasonable attorneys fees and costs.   New York GBL §§ 349 and 350 entitle consumers to statutory damages of $50 and $500, respectively.   The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1).   These remedies are far greater than what is provided by the recall, which is limited to a replacement of parts and no cash.

52.     The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## CLASS ALLEGATIONS

53.     ***Class Definition***: Plaintiffs bring this action on behalf all persons in the following classes and subclasses (collectively referred to as "Class Members"):

a. Nationwide Class: all persons in the United States who purchased a subject Product.

b. Multi-State Implied Warranty Class: all persons who purchased a subject Product for personal, family, or household use: (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

c. Multi-State Consumer Protection Class: all persons who purchased a subject Product for personal, family, or household use: (1) in Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in Missouri within the applicable statute of limitations; (3) in California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in Illinois and New York within the applicable statute of limitations.

     d. <u>Massachusetts Subclass</u>: all persons who purchased a subject Product in Massachusetts.

     e. <u>California Subclass</u>: all persons who purchased a subject Product in California.

     f. <u>New York Subclass</u>: all persons who purchased a subject Product in New York.

     g. <u>Illinois Subclass</u>: all persons who purchased a subject Product in Illinois.

54.     Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or redefined in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

55.     Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

56.     ***Numerosity.***  Members of the classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its retailers, their agents, or other means.

57.    ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a. Whether Defendant knew or should have known of the Defect in the Products in this case, and if so, when it discovered the Defect;

b. Whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

c. Whether Defendant failed to disclose and concealed the existence of the Defect from Plaintiffs and other potential customers;

d. Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

58.    ***Typicality.*** Plaintiffs' claims are typical of the claims of the classes in that Plaintiffs and the classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiffs and all others similarly situated that the Products contain the Defect and can be dangerous.

59.    ***Adequacy***. Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of Class Members. Plaintiffs have no interests that are antagonistic to those of the Class Members. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed Class Members.

60.    *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the classes; the classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

61.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiffs and Members of the classes and will likely retain the benefits of its wrongdoing.

## FIRST CAUSE OF ACTION

### Violations of Mass. Gen. Laws Chapter 93A, § 2

62.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

63.    The Massachusetts Plaintiff brings this cause of action individually and on behalf the Massachusetts Subclass.

64.    Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

65.    940 Mass Code Regs. 3.16 further provides that "an act or practice is a violation of M.G.L. c.93A § 2 if: (1) It is oppressive or otherwise unconscionable in any respect …."

66.    The Massachusetts Plaintiff, members of the Massachusetts Subclass, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

67.    Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

68.    The Products constitute property under Mass. Gen. Laws Ch. 93A.

69.     Defendant engaged in one or more of the following unfair, deceptive, oppressive, or unconscionable acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

a. Misrepresenting the approval or certification of goods;

b. Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

c. Representing that goods are of a particular standard, quality, or grade, if they are of another;

d. Advertising goods with intent not to sell them as advertised;

e. Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

f. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

g. Representing that goods have been supplied in accordance with a previous representation when they have not been.

70.     Defendant knew, should have known, or was reckless in not knowing, that the Products were defective.

71.     Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold mislabeled Products.

72.     Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit, and the injuries are of a nature that they could not have been reasonably avoided by consumers.

73.     Defendant's acts and omissions are also unfair because Defendant violated a government safety standard. The Consumer Product Safety Act imposes "mandatory consumer product safety standards," which includes a requirement that every manufacturer (including an importer), distributor, and retailer of a consumer product who obtains information which reasonably supports the conclusion that the product contains a defect which could create a substantial product hazard to inform the Commission of such defect.

74.     A company like Defendant is deemed to have obtained reportable information when the information has been received by an employee who may reasonably be expected to be capable of appreciating the significance of the information.

75.     A company like Defendant also is deemed to know information that it would have discovered if it had exercised due care to ascertain the truth of complaints or other representations, or information it would have obtained if it had conducted a reasonably expeditious investigation to evaluate the reportability of injuries or other relevant information.

76.     Defendant violated the CPSA by not promptly reporting information that it knew or should have known concerning the Defect, which is a substantial product hazard under the CPSC.

77.     Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured the Massachusetts Plaintiff and the Massachusetts Subclass.

78.     The Massachusetts Plaintiff and the members of the Massachusetts Subclass suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, *inter alia*, they lost money when they purchased the Products and/or paid an inflated purchase price for them.

79.     Defendant had a duty to disclose the Defect at issue here because it had knowledge of the true facts related to the Products before marketing and selling them.

80.     As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, the Massachusetts Plaintiff and the members of the Massachusetts Subclass have incurred damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

81.     The Massachusetts Plaintiff and the members of the Massachusetts Subclass have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product that was not the one represented to them.

82.     Defendant is not incorporated in Massachusetts and owns no property in Massachusetts.

83.     The Massachusetts Plaintiff seeks all available relief under this cause of action.

**SECOND CAUSE OF ACTION**

**Violations of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

84.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

85.    The California Plaintiffs bring this cause of action individually and on behalf all other members of the California Subclass.

86.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

87.    Defendant acted with knowledge and intent.

88.    The California Plaintiffs allege a claim under all three prongs of the UCL.

89.    As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers and that did deceive or confuse reasonable consumers.

90.    Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

91.    The California Plaintiffs also allege a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

92.    As a direct and proximate result of Defendant's unfair and deceptive practices, the California Plaintiffs and members of the California Subclass have suffered out-of-pocket losses.

93.    The California Plaintiffs and members of the California Subclass have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

94.    The California Plaintiffs seeks all relief available under the UCL.

### THIRD CAUSE OF ACTION

**Violations of California's Consumer Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750, *et seq.***

95.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

96.    The California Plaintiffs bring this cause of action individually and on behalf all other members of the California Subclass.

97.    Defendant is a "person" as defined by California Civil Code § 1761(c).

98.    The California Plaintiffs and the members of the California Subclass are "consumers" within the meaning of California Civil Code § 1761(d).

99.    For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

100.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

101.    Defendant acted with knowledge and intent.

102.    Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers and that did deceive or confuse reasonable consumers.

103.    With respect to restitution under the CLRA claim, the California Plaintiffs allege in the alternative that Plaintiffs and members of the California Subclass lack an adequate remedy at law for the reasons already alleged above.

104.    As a result of Defendant's misconduct, the California Plaintiffs and the members of the California Subclass have suffered monetary harm.

105.    More than 30 days prior to filing the Complaint, on April 17, 2025, the California Plaintiffs served notice letters on Defendant pursuant to CLRA § 1782. The letters were sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful, unfair, false, and/or deceptive practices alleged herein. Defendant failed to remedy the issues raised in the letters.

106.    The California Plaintiffs seek all relief available under this cause of action.

## FOURTH CAUSE OF ACTION

### Violation of Song-Beverly Consumer Warranty Act

### Cal. Civ. Code § 1790, *et seq.*

107.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

108.    The California Plaintiffs bring this cause of action individually and on behalf of the members of the California Subclass.

109.    The Products are "consumer goods," and the California Plaintiffs and members of the California Subclass are "buyers" within the meaning of Cal. Civ. Code § 1791.

110.    Defendant is a "manufacturer," "distributor," and/or "retail seller" under Cal. Civ. Code § 1791.

111.    The implied warranty of merchantability included with the sale of each Product means that Defendant warranted that Product (a) would pass without objection in trade under the

contract description; (b) was fit for the ordinary purposes for which the Product would be used; and (c) conformed to the promises or affirmations of fact made on the label or packaging.

112.    The Products would not pass without objection in the trade because they contain the above-described Defect, which also makes them unfit for the ordinary purpose for which they would be used.

113.    The Products are not adequately labeled because their labeling fails to disclose the Defect and fails to advise Class Members of the existence of the danger prior to experiencing failure firsthand.

114.    The Products were not sold on an "as is" or "with all faults" basis.

115.    Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the Product.

116.    Defendant's actions have deprived the California Plaintiffs and members of the California Subclass of the benefit of their bargains and have caused the Products to be worth less than what the California Plaintiffs and the California Subclass paid.

117.    As a direct and proximate result of the breach of implied warranty, the California Plaintiffs and the members of the California Subclass received goods whose condition substantially impairs their value. The California Plaintiffs and members of the California Subclass have been damaged by the diminished value of their Products.

118.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, the California Plaintiffs and members of the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the Products or the overpayment or diminution in value of their Products. They are also entitled to all incidental and consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

119.    Defendant further violated section 1793.2 of the Song-Beverly Consumer Warranty Act, which requires that "every manufacturer of consumer goods sold in [California] and for which the manufacturer has made an express warranty shall" maintain in California service and repair facilities (or authorized independent facilities) close to all areas where its consumer goods are sold to carry out the terms of those warranties. If a warranted product requires repair, there are three options: (1) the buyer can deliver the product to the service facilities for repairs; (2) the manufacturer will come to the buyer's home to make the repair; or (3) the manufacturer will either pick up the product or pay for shipment of the product to the manufacturer. None of those things happened in connection witr the defective products at issue here.

120.    The California Plaintiffs seek all relief available under this cause of action.

## FIFTH CAUSE OF ACTION

### Violations of New York General Business Law § 349

121.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

122.    The New York Plaintiff brings this cause of action individually and on behalf of the New York subclass.

123.    GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

124.    In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 349.

125.    The New York Plaintiff and members of the New York Subclass are consumers who purchased the Products from Defendant for their personal use.

126.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices. Had the New York Plaintiff and members of the New York Subclass been apprised of these facts, they would not have purchased the Products.

127.    The foregoing deceptive acts and practices were directed at consumers.

128.    The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the Products had been truthfully advertised, or they would not have paid the price premium associated with the Products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

129.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that the New York Plaintiff and members of the New York Subclass  sustained from having paid for and used Defendant's Products.

130.    As a result of Defendant's violations, the New York Plaintiff and members of the New York Subclass have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

131.    The New York Plaintiff seeks all available relief under GBL § 349.

## SIXTH CAUSE OF ACTION

### Violations of New York General Business Law § 350

132.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

133.    The New York Plaintiff brings this cause of action individually and on behalf of the New York Subclass.

134.    GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to § 350, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

135.    In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 350.

136.    Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way that constitutes false advertising in violation of GBL § 350.

137.    The New York Plaintiff and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

138.    By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices,. Had the New York Plaintiff and members of the New York Subclass been apprised of these facts, they would not have purchased the Products.

139.    The foregoing deceptive acts and practices were directed at consumers.

140.    The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the Products had been truthfully advertised, or they would not have paid the price premium associated with the Products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 350.

141.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that the New York Plaintiff and members of the New York Subclass sustained from having paid for and used Defendant's Products.

142.    As a result of Defendant's violations, the New York Plaintiff and members of the New York Subclass have suffered damages because: (a) they paid a premium price based on

Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

143.    The New York Plaintiff seeks all available relief under GBL § 350.

## SEVENTH CAUSE OF ACTION

### Violation of Illinois Consumer Fraud and Deceptive Practices Act

### 815 ILCS §§ 505-1, *et seq.* ("ICFA")

144.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

145.    The Illinois Plaintiff brings this cause of action individually and on behalf of the Illinois Subclass.

146.    The Illinois Plaintiff and members of the Illinois Subclass are persons within the context of the IICFA, 815 ILCS § 505/1(e).

147.    Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

148.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

149.    The Illinois Plaintiff and members of the Illinois Subclass are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS § 505/1(e).

150.    The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS § 505/2.

151.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or

employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

152.    The Illinois Plaintiff and members of the Illinois Subclass reasonably relied upon Defendant's misrepresentations and omissions alleged herein regarding the Products.

153.    Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA §§ 505/1, *et seq.*

154.    Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

155.    Defendant advertised the Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

156.    Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

157.    Before placing the Products into the stream of commerce and into the hands of consumers, including the Illinois Plaintiff and members of the Illinois Subclass, Defendant knew or should have known that the Products had a serious Defect, and were otherwise not able to safely or reliably function as intended and created a serious risk to injury of the user, but Defendant omitted and concealed this material fact to consumers by continuing to place the Products into the stream of commerce without any notice or disclosure of the material Defect.

158.    Defendant chose to market the Products in this way to impact consumer choices and gain market share. Defendant is aware that all consumers who purchased the Products were exposed to and would be affected by its misrepresentations and omissions and would reasonably

believe that the Products safely and reliably functioned and were safe for use by the user, and that Defendant's marketing materials, including representations and omissions, were otherwise accurate. However, Defendant's representations are false and misleading because the Products contain a material Defect, are not safe for use by its user, and do not function safely or reliably.

159.    Defendant intended that the Illinois Plaintiff and each of the members of the Illinois Subclass would reasonably rely upon the representations, misleading characterizations, and material omissions concerning the true nature of the Products.

160.    Defendant's representations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause the Illinois Plaintiff and members of the Illinois Subclass to be deceived about the true nature of the Products.

161.    The Illinois Plaintiff and members of the Illinois Subclass have been damaged as a proximate result of Defendant's violations of the ICFA. They have suffered damages as a direct and proximate result of purchasing the defective Products.

162.    As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, the Illinois Plaintiff and the members of the Illinois Subclass have suffered ascertainable losses of money caused by Defendant's representations and material omissions regarding the ability of the Products to function as intended.

163.    Had they been aware of the true nature of the Products, the Illinois Plaintiff and members of the Illinois Subclass would have paid less for the Products or would not have purchased them on the same terms.

164.    Based on Defendant's unfair and/or deceptive acts or practices, the Illinois Plaintiff and members of the Illinois Subclass are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS § 505/10a.

## EIGHTH CAUSE OF ACTION

### Violations of State Consumer Fraud Acts

165.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

166.    Plaintiffs bring this Count on behalf of themselves and the Multi-State Consumer Fraud Acts Subclass against Defendant.

167.    The Consumer Fraud Acts of the States in the Multi-State Consumer Fraud Acts Subclass prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

        a. California (Cal. Bus. & Prof. Code §17200, *et seq.*)

        b. Florida (Fla. Stat. §501.201, *et seq.*);

        c. Illinois (815 Ill. Comp. Stat. §505/1, *et seq.*);

        d. Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);

        e. Michigan (Mich. Comp. Laws §445.901, *et seq.*);

        f. Minnesota (Minn. Stat. §325F.67, *et seq.*);

        g. Missouri (Mo. Rev. Stat. §407.010, *et seq.*);

        h. New Jersey (N.J, Stat. §56:8-1, *et seq.*);

        i. New York (N.Y. Gen. Bus. Law §§349 and 350); and

        j. Washington (Wash. Rev. Code §19.86.010, *et seq.*);

168.    Plaintiffs and the other members of the Multi-State Consumer Fraud Acts Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Subclass because Plaintiffs and Members of the Multi-State Consumer Fraud

Acts Subclass have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein, and have suffered an ascertainable loss.

169.    Defendant engaged in unfair and/or deceptive conduct by making material representations and omissions regarding the safety and utility of the Products, and the suggested maintenance repair, as discussed herein.

170.    Defendant intended that Plaintiffs and members of the Multi-State Consumer Fraud Acts Subclass would rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

171.    Given Defendant's longstanding position in the industry as a leader in reliable personal transportation, Plaintiffs and reasonable consumers trusted and relied upon Defendant's representatives regarding the safety and utility of the Products.

172.    As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and the other Members of the Multi-State Consumer Fraud Acts Subclass have sustained damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### Unjust Enrichment

173.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

174.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

175.    To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

176.    Plaintiffs' unjust enrichment claims are premised on Defendant's pre-sale activities concerning the Products and are unrelated to its post-sale obligations to provide repairs.

177.    Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiffs and Class Members paid to Defendant.

178.    Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

179.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, and retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that fact the Products were dangerous. This caused injuries to Plaintiffs and Class Members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

180.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

181.    Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

182.    Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

183.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered in an amount to be proven at trial.

184.    Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

185.    Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## TENTH CAUSE OF ACTION

### Fraud by Omission / Intentional Misrepresentation

186.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

187.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

188.    This claim is based on Defendant's fraudulent omissions and misrepresentations concerning the safety, reliability, and durability of the Products. As discussed above, Defendant failed to disclose that the Products had a dangerous Defect, while advertising that the Products were safe, reliable, and durable.

189.    Defendant's false and misleading omissions and misrepresentations were made with knowledge of their falsehood. Defendant is a nationwide manufacturer and distributor, routinely undergoes product testing, and would have known about the Defect prior to sale. Nonetheless, Defendant continued to sell its defective Products to unsuspecting consumers.

190.    The false and misleading omissions and misrepresentations were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class Members to purchase the Products.

191.    The fraudulent actions of Defendant caused damage to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

192.    Plaintiffs seek all relief available under this cause of action.

## ELEVENTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

193.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

194.    Plaintiffs' individual claims are brought under the laws of the State in which they purchased their respective Products. The claims of absent members of the Multi-State Implied Warranty Sub-Class are brought under the state's laws in which they purchased their Products and identified below.

> a. Alaska Stat. §§ 45.02.314, *et seq.*;
>
> b. Ark. Code Ann. §§ 4-2-314, *et seq.*;
>
> c. Cal. Civ. Code §§ 1792, 1791.1, *et seq.* (the "Song-Beverly Act");
>
> d. Colo. Rev. Stat. Ann. §§ 4-2-314, *et seq.*;
>
> e. Conn. Gen. Stat. §§ 42a-2-314, *et seq.*;
>
> f. Del. Code Ann. Tit. 6, §§ 2-314, *et seq.*;
>
> g. D.C. Code §§ 28:2-314, *et seq.*;
>
> h. Fla. Stat. §§ 672.314, *et seq.*;
>
> i. Haw. Rev. Stat. §§ 490:2-314, *et seq.*;
>
> j. Ind. Code §§ 26-1-2-314, *et seq.*;
>
> k. Kan. Stat. Ann. §§ 84-2-314, *et seq.*;
>
> l. La. Civ. Code Ann. Art. 2520, *et seq.*;
>
> m. Md. Code Ann., Com. Law §§ 2-314, *et seq.*;
>
> n. Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, *et seq.*;
>
> o. Mass. Gen. Laws ch. 106, §§ 2-314, *et seq.*;

p. Mich. Comp. Laws Ann. §§ 440.2314, *et seq.*;

q. Minn. Stat. §§ 336.2-314, *et seq.*;

r. Miss. Code Ann. §§ 75-2-314, *et seq.*;

s. Mo. Rev. Stat. §§ 400.2-314, *et seq.*;

t. Mont. Code Ann. §§ 30-2-314, *et seq.*;

u. Neb. Rev. Stat. Ann. §§ 2-314, *et seq.*;

v. Nev. Rev. Stat. §§ 104.2314, *et seq.*;

w. N.H. Rev. Stat. Ann. §§ 382-A:2-314, *et seq.*;

x. N.J. Stat. Ann. §§ 12A:2-314, *et seq.*;

y. N.M. Stat. Ann. §§ 55-2-314, *et seq.*;

z. N.D. Cent. Code §§ 41-02-31, *et seq.*;

aa. Ohio Rev. Code Ann. §§ 1302.27, *et seq.*;

bb. Okla. Stat. Tit. 12A, §§ 2-314, *et seq.*;

cc. 13 Pa. Stat. Ann. §§ 2314, *et seq.*;

dd. R.I. Gen. Laws §§ 6A-2-314, *et seq.*;

ee. S.C. Code Ann. §§ 36-2-314, *et seq.*;

ff. S.D. Codified Laws §§ 57A-2-314, *et seq.*;

gg. Tex. Bus. & Com. Code Ann. §§ 2.314, *et seq.*;

hh. Utah Code Ann. §§ 70A-2-314, *et seq.*;

ii. Va. Code Ann. §§ 8.2-314, *et seq.*;

jj. Vt. Stat. Ann. Tit. 9A, §§ 2-314, *et seq.*;

kk. W. Va. Code §§ 46-2-314, *et seq.*; and

ll. Wyo. Stat. Ann. §§ 34.1-2-314, et seq.

195.    Defendant manufactured and distributed the Products for sale to Plaintiffs and the Class.

196.    Defendant impliedly warranted to Plaintiffs and Class Members that their Products were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

197.    As alleged herein, Defendant breached the implied warranty of merchantability because the Products suffer from a safety Defect. The Products are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

198.    Due to the safety defect, Plaintiffs and the members of the Class and Subclass cannot use their Products as intended, substantially free from Defects.  The Products do not provide safe and reliable function as intended, represented, or described and pose a serious risk of injury. As a result, Plaintiffs and the members of the Class and Subclass cannot use their Products for the purposes for which they purchased them.

199.    Furthermore, due to the safety Defect, Plaintiffs and the Class Members cannot operate their Products as intended, substantially free from defects, unless they register for, receive, and correctly use the maintenance kit. This maintenance kit does not adequately assuage concerns that the risk of severe injury may not occur again. As a result, Plaintiffs and the Class Members cannot use their Products for the purposes for which they purchased them.

200.    Defendant received any required pre-suit notice.

201.    Amazon.com, Academy.com, and BestBuy are authorized dealers of the Products. Plaintiffs and class members were the intended end-consumer of the Products, not the retailers. The implied warranty was intended to benefit the consumers, not the authorized dealers, and/or

alternatively, Plaintiffs and class members are third party beneficiaries of an implied warranty between Defendant and retailers.

202.    Defendant was aware of remote customers' requirements that products work safely and was aware that remote customers generally expected the Products to meet minimum standards.

203.    The Defect is substantially certain to manifest within the warranty period and/or useful expected life of the Product.

204.    Plaintiffs did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies.  Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiffs and Class Members have been injured in an amount to be proven at trial.

205.    Plaintiffs and Class Members seek all relief available under this cause of action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed classes, pray for the following relief:

A.    Certification of the proposed classes;

B.    Appointment of Plaintiffs as representative of the classes;

C.    Appointment of undersigned counsel as counsel for the classes;

D.    For an order finding in favor of Plaintiffs and Class Members on all counts asserted herein;

E.    For an award of equitable relief as is necessary to protect the interests of Plaintiffs and the Class Members;

F.      For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

G.      For prejudgment interest on all amounts awarded;

H.      For an order of restitution and all other forms of equitable monetary relief;

I.      For an order awarding Plaintiffs and Class Members their reasonable attorney fees, expenses, and costs of suit.

J.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: October 27, 2025           **COOCH AND TAYLOR, P.A.**

*/s/ R. Grant Dick IV*
R. Grant Dick IV (Del. No. 5123)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3867
E-Mail: gdick@coochtaylor.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

**OF COUNSEL:**
Yeremey O. Krivoshey (admitted *pro hac vice*)
SMITH KRIVOSHEY, PC
28 Geary Str STE 650 #1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

Joel D. Smith (admitted *pro hac vice*)
SMITH KRIVOSHEY, PC
867 Boylston Street 5ᵗʰ Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

Mason A. Barney (*pro hac vice* forthcoming)
Leslie L. Pescia (admitted *pro hac vice*)
SIRI | GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com
lpescia@sirillp.com

Kevin Laukaitis (*pro hac vice* forthcoming)
Daniel Tomascik (*pro hac vice* forthcoming)
LAUKAITIS LAW LLC
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

### CLRA Venue Declaration, Civil Code § 1780(c)

I, Joel D. Smith, declare as follows:

1.      I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.      I am the attorney for the Plaintiffs in the above-captioned action.

3.      I submit this declaration in support of the Consolidated Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.      The Consolidated Class Action Complaint has been filed in the proper place for trial of this action.

5.      It is my understanding that Defendant regularly transacts business in this District, and is incorporated in this District.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on October 27, 2025 in Danielson, Connecticut.

By: _____
Joel D. Smith