# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE SEGWAY SCOOTER RECALL
LITIGATION

C.A. No. 25-cv-00369-GBW
CONSOLIDATED

---

**SEGWAY INC.'S BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION
AND STAY ALL DEADLINES AND PROCEEDINGS**

DORSEY & WHITNEY (DELAWARE) LLP

Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Fax: (302) 425-7177
Email: glorioso.alessandra@dorsey.com

DORSEY & WHITNEY LLP

Adam C. Buck (pro hac vice)
111 South Main Street, Suite 2100
Salt Lake City, UT 84111-2176
Telephone: 901-933-7360
Email: buck.adam@dorsey.com

Kirk Schuler (pro hac vice)
801 Grand Avenue, Suite 4100
Des Moines, IA 50309
Telephone: (515) 697-3622
Email: schuler.kirk@dorsey.com

Anna Boyle (pro hac vice)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 492-6639
Email: boyle.anna@dorsey.com

*Attorneys for Defendant Segway Inc.*

# TABLE OF CONTENTS

I.    SUMMARY .................................................................................................................. 1

II.   BACKGROUND ........................................................................................................... 1

   A.   Purchasers Of The G30P Received The Arbitration Agreement In The Box (And Are Additionally Notified On The Box) ............................................................................... 3

   B.   Purchasers Of The G30LP May Have Received The Arbitration Agreement In The Box And Are Otherwise Notified In Product Inserts And Online Agreements That Any Claims Are Subject To Arbitration ................................................................................... 4

   C.   The Arbitration Agreement ............................................................................................ 6

III.  STANDARD OF REVIEW ......................................................................................... 8

IV.   ARGUMENT .............................................................................................................. 10

   A.   The Federal Arbitration Act Applies To This Dispute ................................................ 10

   B.   The Court Should Compel Arbitration Because The Agreements Are Valid And The Claims Are Within Their Scope. ................................................................................... 11
        i.  The Parties Have A Valid Arbitration Agreement. .............................................. 11
        ii. The Claims Fall Within The Scope Of The Arbitration Agreement. ................... 16

   C.   The Court Should Also Dismiss The Class Allegations Because The Arbitration Agreements Require Claims To Be Pursued Individually. ........................................... 17

   D.   The Court Should Stay This Case And All Deadlines Pending Arbitration Because Doing So Is Mandated By The FAA. ............................................................................ 18

V.    CONCLUSION ........................................................................................................... 20

VI.   STATEMENT REGARDING DELAWARE L.R. 7.1.1 ........................................... 20

4923-0405-1065\2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abebe v. Yum! Brands, Inc.*,
No. 4:23-cv-682, 2024 U.S. Dist. LEXIS 218306 (E.D. Tex. Dec. 3, 2024) ................................... 19

*Adler v. Gruma Corp.*,
135 F.4th 55 (3d Cir. 2025) .......................................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................................... 11, 12, 18

*Bacon v. Avis Budget Grp., Inc.*,
959 F.3d 590 (3d Cir. 2020) ....................................................................................................... 11

*Barbour v. CIGNA HealthCare of N.J., Inc.*,
No. 02-417 (JBS), 2003 U.S. Dist. LEXIS 26214 (D.N.J. Mar. 4, 2003) ........................................ 10

*Coiro v. Wachovia Bank, N.A.*,
No. 11-3587, 2012 U.S. Dist. LEXIS 24508 (D.N.J. Feb. 27, 2012) ............................................... 18

*Debbie's Customized Staffing, Inc. v. Byline Bank*,
No. 18 ...................................................................................................................................... 12

*Dorset v. United Healthcare Servs., Inc.*,
No. 23-21749 (JXN)(JRA), 2024 U.S. Dist. LEXIS 118906 (D.N.J. July 8, 2024) ........................... 8

*Fuller v. Cabinetworks Mich., LLC*,
No. 4:24-CV-01618, 2025 U.S. Dist. LEXIS 17276 (M.D. Pa. Jan. 31, 2025) ......................... 19, 20

*Green Tree Financial Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) ..................................................................................................................... 17

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 764 (3d Cir. 2013) .................................................................................................... 8, 20

*Harris v. Green Tree Fin. Corp.*,
183 F.3d 173 (3d Cir. 1999) ....................................................................................................... 11

*Keystone Auto. Indus. v. Gorgone*,
No. 21-0780, 2021 U.S. Dist. LEXIS 209064 (E.D. Penn. Oct. 29, 2021) ................................... 19

*Lamps Plus, Inc. v. Varela,*
    587 U.S. 176 (2019) ..................................................................................................18

*Litman v. Cellco P'ship,*
    655 F.3d 225 (3d Cir. 2011) ..................................................................................18

*Magnuson Moss Warranty-Federal Trade Commission Improvements*
    *Act*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/legal-
    library/browse/statutes/magnuson-moss-warranty-federal-trade-commission-
    improvements-act (last visited June 4, 2025) .........................................................6

*McGrath v. Doordash, Inc.,*
    No. 19-cv-05279-EMC, 2020 U.S. Dist. LEXIS 207491 (N.D. Cal. Nov. 5, 2020) ......................10

*Morales v. Lexxiom, Inc.,*
    No. CV 09-6549 SVW, 2010 U.S. Dist. LEXIS 151809 (C.D. Cal. Jan. 29, 2010) ........................19

*Noble v. Samsung Elec. Am., Inc.,*
    682 Fed. Appx. 113 (3d. Cir. 2017) ......................................................................13

*Payne v. Samsung Elecs. Am., Inc.,*
    No. N23C-03-193 FWW, 2024 Del. Super. LEXIS 114 (Super. Ct. Feb. 21, 2024)................*passim*

*Perry v. Thomas,*
    482 U.S. 483 (1987) ..............................................................................................11

*Ramirez v. LQ Mgmt., L.L.C.,*
    No. 2:19-CV-06507-ODW, 2020 U.S. Dist. LEXIS 93975 (C.D. Cal. May 29,
    2020).......................................................................................................................10

*Robinson-Simms v. Best Deal Auto Sales, LLC,*
    No. 23-518 (MN), 2024 U.S. Dist. LEXIS 227726 (D. Del. Dec. 17, 2024)............................ 12, 16

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
    490 U.S. 477 (1989) ..............................................................................................12

*Sellers v. JustAnswer LLC,*
    73 Cal. App. 5th 444 (Cal. Ct. App. 2021)............................................................12

*Shubert v. Well Fargo Auto Fin., Inc.,*
    No. 08-3754 (NLH), 2008 U.S. Dist. LEXIS 105198 (D.N.J. Dec. 31, 2008)................................18

*Silfee v. Auto. Data Processing, Inc.,*
    696 F. App'x 576 (3d Cir. 2017) ...................................................................... 12, 20

*Siperavage v. Uber Techs., Inc.,*
    No. 20-12265, 2021 U.S. Dist. LEXIS 122002 (D.N.J. June 30, 2021) .........................................18

iv

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)..................................................................................................18

*THI of Pa. at Mountainview, LLC v. McLaughlin*,
   No. 14-1616, 2015 U.S. Dist. LEXIS 59557 (W.D. Pa. May 6, 2015) ..................................... 10, 11

*Trippe Mfg. Co. v. Niles Audio Corp.*,
   401 F.3d 529 (3d Cir. 2005) ........................................................................................ 16, 17

*Vasadi v. Samsung Elecs. Am., Inc.*,
   No. 21-10238-WJM-AME, 2021 U.S. Dist. LEXIS 228899 (D.N.J. Nov. 29,
   2021)...................................................................................................................8, 13

*Westerkamp v. Samsung Elecs. Am., Inc.*,
   No. 21-cv-15639 (JXN) (JRA), 2023 U.S. Dist. LEXIS 109433 (D.N.J. June 26,
   2023)................................................................................................................ 13, 15

*Young v. Experian Info. Sols., Inc.*,
   119 F.4th 314 (3d Cir. 2024).........................................................................................8

**Statutes**

9 U.S.C. § 2 ...........................................................................................................8, 10

9 U.S.C. § 4 .................................................................................................... 12, 18, 19

Delaware's Uniform Arbitration Act .....................................................................................11

E-Warranty Act of 2015, Pub. L. No. 114-51, 129 Stat. 494.............................................................5

**Other Authorities**

Federal Rules of Civil Procedure Rule 6.................................................................................19

Local Rule 7.1.1 ........................................................................................................20

Federal Rules of Civil Procedure Rule 12 .................................................................................8

Federal Rules of Civil Procedure Rule 56 ..............................................................................8, 9

## I.    SUMMARY

This case is in its infancy with no discovery having occurred and a Consolidated Complaint having been filed on October 27, 2025.  (D.I. 34).  Nevertheless, this proposed class action cannot proceed in this Court (or at all) because Plaintiffs' claims against Segway must be arbitrated on an individual basis.  Indeed, Segway prominently notifies purchasers of its products that they are subject to a "Claims and Dispute Resolution" procedure, including binding arbitration under the Federal Arbitration Act ("FAA") which "shall not under any circumstances proceed as part of a class action or class arbitration." *See* Decl. of Wei Zhao ("Zhao Decl.") Ex. 1 (KickScooters' Manufacturer's Limited Warranties (Americas) ("Limited Warranty")) at 6.  The arbitration portion of the Limited Warranty is referred to here as the "Arbitration Agreement."

The issue presented by this Motion is whether the pending lawsuit should be stayed and ordered to arbitration in accordance with the FAA and the Arbitration Agreement. The answer is yes, for four reasons.  First, the FAA applies because (1) the Arbitration Agreement requires application of the FAA, and (2) this case involves a transaction and product affecting interstate commerce. Second, under the FAA's two-part test, a valid agreement to arbitrate exists for both KickScooter models identified in the Consolidated Complaint, which encompasses all claims and plaintiffs in this case.  Third, the Arbitration Agreement requires individual and not class-wide arbitration.  And fourth, the FAA requires that any other aspect of this case should be stayed pending arbitration.

## II.    BACKGROUND

Plaintiffs allege, based on Segway's participation in a Consumer Product Safety Commission recall in March 2025 concerning its Max G30P and Max G30LP KickScooters (the "G30P," "G30LP," or, collectively, the "Products" or "KickScooters"), that the Products are defective because "[t]he folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers."  Consol. Compl. ¶¶ 1-3 ("Compl") (D.I. 34). Plaintiffs' claims, however,

1

are overcooked and inaccurate. Although Segway participated in the recall, the "recall" focused on providing additional notice to consumers to encourage them to "contact Segway to receive information to determine whether the folding mechanism needs adjustment and to receive a free maintenance kit." *See Segway Recalls Segway Ninebot Max G30P and Max G30LP KickScooters Due to Fall Hazard and Risk of Serious Injury*, CONSUMER PROD. SAFETY COMM'N, https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-Max-G30P-and-Max-G30LP-KickScooters-Due-to-Fall-Hazard-and-Risk-of-Serious-Injury (last visited Nov. 15, 2025). Segway has always warned its customers of the risk of injury and that they must check for loose fasteners and damaged components before each ride, and this latest notice—in the form of a *maintenance* recall—informed KickScooter riders to check the folding mechanism on their KickScooters to ensure they were tight and prepared for continued and ongoing use. As Segway informed customers at the time, the "KickScooter[s] remain[] fully functional and safe with proper maintenance." *See Recall of Segway Ninebot Max G30P & Max G30LP*, SEGWAY, https://service.segway.com/us-en/g30RecallNotice (last visited Nov. 15, 2025).

Nevertheless, the lawsuit claims the Products suffer a folding mechanism defect and that Segway misled its customers through an inadequate recall and misrepresentations about the safety of the Products. Central to such allegations, Plaintiffs claim to have reviewed the "Product's item details, descriptions, product specifications and features" as well as "the Product's packaging, labeling, [and] other information surrounding the Product" in conjunction with their purchases. Compl. ¶ 16; see also id. ¶¶ 26-27, 30, 111. Further, Plaintiffs admit to being aware of the Limited Warranty, as they claim to rely upon "warranty claim data" and further assert at least one claim that is contingent upon "the manufacturer ha[ving] made an express warranty." *Id.* ¶ 119.

Despite specifically discussing and relying upon product packaging and labeling, Plaintiffs now seek to ignore specific aspects of the packaging and labeling in bringing their claims. In particular, for

the purposes of the instant Motion, Plaintiffs seek to ignore an Arbitration Agreement that was, as described below, part of the Products' packaging and labeling and requires Plaintiffs to arbitrate their claims individually.  Because the manner in which the Arbitration Agreement is presented to customers may differ between purchasers of the G30P and the G30LP, Segway describes this presentation separately for each model.

### A. Purchasers Of The G30P Received The Arbitration Agreement In The Box (And Are Additionally Notified On The Box).

Purchasers of the G30P, including Plaintiffs Cicero, Sabu, Holmes, and Rzewuski, are subject to an Arbitration Agreement identified on, and then contained within, the box of their G30P at the time of their purchase.  Contained as an "insert" within the product packaging is a Limited Warranty, including an Arbitration Agreement.  The Arbitration Agreement is a valid contract that was conspicuously provided to every G30P purchaser in conjunction with the sale.  First, the Arbitration Agreement was prominently referenced on the Max G30P box.  Specifically, the box bears a label explaining an "ARBITRATION AGREEMENT SHALL APPLY" to each purchase transaction and includes a URL where each purchaser may review and study the Arbitration Agreement.  *See* Zhao Decl. ¶ 11.  A depiction of this prominent notice is as follows:



Next, upon opening the G30P box, a consumer is confronted with a packet containing the G30P Quick Start guide, a User Manual, the Limited Warranty booklet, fasteners, and a tool. *Id.* ¶ 13. This packet is clearly visible upon opening the KickScooter's box, as it is contained in the very top of the box and must be removed with the KickScooter's Styrofoam packing material. *Id.* ¶ 14. A KickScooter cannot even be removed from the box without removing this packing material and packaging. *See id.* ¶ 15. In fact, the KickScooter's electric charger is located under the packet containing the Limited Warranty, and the packet includes a tool and screws needed for assembly, forcing a consumer to open the packet to access these components.[1] *See id.* ¶¶ 13-14.

### B. Purchasers Of The G30LP May Have Received The Arbitration Agreement In The Box And Are Otherwise Notified In Product Inserts And Online Agreements That Any Claims Are Subject To Arbitration.

Purchasers of the G30LP, including Plaintiff Heymer, are also subject to an Arbitration Agreement that is given to them in one of several different ways: (1) in the box, (2) by reference in the G30LP's User Manual with additional information supplied to G30LP purchasers directing them to Segway's website, and/or (3) online.

Much like the G30P purchasers described above, G30LP purchasers—particularly those who purchased G30LP KickScooters manufactured in 2020 and 2021—potentially received notice of the Arbitration Agreement upon opening their product. *Id.* ¶¶ 16-18. For these purchasers, the Arbitration Agreement was presented to them "in the box" as described above for the G30P. *Id.* ¶¶ 13-16. The Limited Warranty booklet provided with these KickScooters expressly included the Arbitration

---

[1] The internet is fertile ground for "unboxing" videos, which demonstrate how consumers encounter the Limited Warranty. For example, a typical consumer unboxing his G30P KickScooter can be viewed here: *Segway Ninebot Max G30 – Unboxing & Review*, YOUTUBE, https://www.youtube.com/watch?v=Mb86niuplgE (last visited May 14, 2025) (including a list of "Box Contents," including the "Warranty," discussing a "goodie bag," and flipping through the Limited Warranty, including the "Claims and Dispute Resolution" section); *see also Segway Ninebot KickScooter Max - Unboxing, Setup and First Impressions*, YOUTUBE, https://www.youtube.com/watch?v=cMhjEoG3cQc (last visited May 14, 2025) (handling a packet containing the Limited Warranty multiple times, specifically noting it was within the box).

Agreement, with one version of this Limited Warranty Booklet stating on its cover that it was a "Limited Warranty and Dispute Resolution Agreement." *Id.* ¶ 18. Copies of the Limited Warranty (V. 1 and 2) provided to consumers are attached as Exhibits 2 and 3 to the Declaration of W. Zhao.[2]

Similarly, G30LP purchasers who purchased products manufactured later opened their boxes to find a similar packet presented in a similar form. *Id.* ¶¶ 13-19. These G30LP purchasers, however, would receive notice of the Limited Warranty and Arbitration Agreement in one or more different forms. *Id.* Although these G30LP users received a warranty booklet packaged as described above, that warranty booklet (which did not contain the Arbitration Agreement) stated on its face that it did not apply to purchasers in the United States, as it applied to consumers in "Europe, Middle East, and Africa." *Id.* Nevertheless, at page 4 of the G30LP User Manual, purchasers were advised of a "Limited Warranty" and the exterior of the box directed users to visit www.segway.com for further information. *Id.* ¶ 20. At www.segway.com, users could access a Limited Warranty applicable to all Segway KickScooters, including the G30LP, at the URL https://www.segway.com/warranty/information (which was active from June 2019 until February 2025). *Id.* ¶¶ 20-21. Moreover, purchasers could access the Limited Warranty and Arbitration Agreement applicable to KickScooters from November 2021 through the present at https://store.segway.com/warranty-information (last visited June 6, 2025). *Id.* Indeed, "[t]he E-Warranty Act of 2015, Pub. L. No. 114-51, 129 Stat. 494," permitted companies to comply with rules concerning "pre-sale availability of warranties to provide that disclosure of a warranty on the manufacturer's website complies with the rule so long as (a) the location of the website and an offline means of obtaining the warranty are indicated on the product, packaging, or manual, and (b) the seller makes the warranty available at the location of the sale before

---

[2] A video appears to depict a G30LP purchaser unboxing his product and holding the Limited Warranty Version 2. *See Install handlebar & unbox, charging new Max G30LP by Segway - Ninebot. Beeping begins!*, YOUTUBE, https://www.youtube.com/watch?v=mL-KhSrDZ.mg (last visited June 4, 2025).

purchase."[3] A copy of this Limited Warranty is attached as Exhibit 4 to the Declaration of W. Zhao. As explained by Mr. Zhao, Segway at all times provided and communicated to G30LP purchasers in the United States that a Limited Warranty applied to their KickScooter, and the applicable Limited Warranty contained the Arbitration Agreement and class action / consolidated action waiver. *See generally*, Zhao Decl. Indeed, the Limited Warranty attached as Exhibit 4 to Mr. Zhao's declaration has been available on Segway's website since 2019. *Id.* ¶ 21.

Finally, for certain purchases of the G30LP, consumers may receive the Arbitration Agreement online. For example, from September 2024 to the present, consumers who purchased the G30LP online directly from Segway would encounter, prior to checkout, a notice stating that "Segway's Sales of Goods T&C (including Arbitration & Restocking Fee)," would apply. *Id.* ¶ 22. Other retailers like Amazon have also disclosed a copy of the Limited Warranty on their websites. *Id.*

### C. The Arbitration Agreement.

The Limited Warranty prominently discloses to purchasers of the KickScooters that the Limited Warranty is a legal document with "SPECIFIC LEGAL RIGHTS" for KickScooter purchasers. *See id.* Ex. 1, Limited Warranty at 1; Ex. 4 at 1. Specifically, the Limited Warranty with the Arbitration Agreement states on its cover that "THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS . . . ." *See* Ex. 1, Limited Warranty at 1; Ex. 4 at 1. The Limited Warranty then includes a specific section entitled "Claims and Dispute Resolution"—the Arbitration Agreement— addressing each purchaser's agreement to arbitrate unless the purchaser provides notice within 30 days to "opt out." Ex. 1, Limited Warranty at 6-7. Among other things, the Arbitration Agreement provides as follows:

> SEGWAY AND YOU AGREE THAT ALL CLAIMS OR DISPUTES ARISING
> IN ANY WAY FROM . . . THE SALE, CONDITION OR PERFORMANCE OF

---

[3] *See Magnuson Moss Warranty-Federal Trade Commission Improvements Act*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/legal-library/browse/statutes/magnuson-moss-warranty-federal-trade-commission-improvements-act (last visited June 4, 2025).

> THE PRODUCT, WHETHER BASED IN CONTRACT, TORT, STATUTORY, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL THEORY, AND ALL CLAIMS THAT ARE SUBJECT OF A PURPORTED CLASS ACTION LITIGATION . . . SHALL BE RESOLVED THROUGH ARBITRATION AS PROVIDED FOR HEREIN, OR IN SMALL CLAIMS COURT, AND NOT BY A TRIAL BY JURY.[4]

*Id.* at 6.  Additionally, the Arbitration Agreement precludes Plaintiffs from participating in any consolidated or class-based claims:

> YOU AGREE THAT YOU MAY ARBITRATE CLAIMS AGAINST NINEBOT AND SEGWAY ONLY IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF, A CLASS REPRESENTATIVE, OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING.[5]

*Id.*  Indeed, the Arbitration Agreement makes certain that

> Any such arbitration shall not be combined or consolidated with a claim or dispute involving any other person's or entity's product or claim or dispute, and specifically, without limitation of the foregoing, shall not under any circumstances proceed as part of a class action or arbitration.

*Id.*  In addition to setting forth the terms of Plaintiffs' agreement to arbitrate, the Arbitration Agreement describes (1) the process for initiating and proceeding with an arbitration, (2) that "[t]he arbitration shall be conducted by the American Arbitration Association," (3) that the cost of Plaintiffs' arbitration will be borne by parties other than Plaintiffs, and (4) that Plaintiffs could have "opt[ed] out" of Arbitration Agreement by sending an email to "optout@segway.com" or by calling a telephone number within 30-days of the consumer's purchase.  *Id.* at 7-8.[6]  Plaintiffs did not "opt out" in accordance with this procedure.  Zhao Decl. at ¶ 23.

The Arbitration Agreement also states clearly that the "arbitrator shall decide all issues of

---

[4] Versions 1 and 2 of the Limited Warranty use slightly different language, but likewise explain that all claims must be submitted to arbitration.  *See* Zhao Decl. Ex. 2 at 6; Ex. 3 at 7-8.

[5] Versions 1 and 2 of the Limited Warranty use slightly different language, but likewise explain that purchasers waive the right to participate in class or consolidated actions and must arbitrate solely on an individual basis.  *Id.*, Ex. 2 at 6; Ex. 3 at 8.

[6] Versions 1 and 2 of the Limited Warranty use slightly different language, but they each likewise provide for an "opt out" of the Arbitration Clause by emailing "optout@segway.com" within 30 days of purchase.  *See* Zhao Decl. Ex. 2 at 6-7; Ex. 3 at 8-9.

4923-0405-1065\2

interpretation and application of the Limited Warranty," with "a court . . . determin[ing] the scope and enforceability of this arbitration provision." Zhao Decl. Ex. 1, Limited Warranty at 7; Ex. 2 at 7; Ex. 4 at 7.[7]  Plaintiffs' claims are within the scope of this enforceable Arbitration Agreement.

## III.    STANDARD OF REVIEW

The FAA authorizes this Court to compel arbitration. *See* 9 U.S.C. § 2.  A motion to compel arbitration under the FAA can be considered under either a Rule 12(b)(6) standard or a Rule 56 standard, depending on the circumstances. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024).  "If the motion can be decided 'based on the face of a complaint, and documents relied upon in the complaint,' a motion-to-dismiss standard should be used; otherwise, the summary judgment standard should be applied." *Adler v. Gruma Corp.*, 135 F.4th 55, 63 (3d Cir. 2025) (quotation omitted). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013) (quotation omitted) (cleaned up); *see also Dorset v. United Healthcare Servs., Inc.*, No. 23-21749 (JXN)(JRA), 2024 U.S. Dist. LEXIS 118906, at *5 (D.N.J. July 8, 2024) ("[E]ven where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations."). This approach "appropriately fosters the FAA's interest in speedy dispute resolution." *Guidotti*, 716 F.3d at 774.  Regardless, whether under Rule 12 or under Rule 56, a motion to compel arbitration should be decided first, at the outset of the case. *See generally Vasadi v. Samsung Elecs. Am., Inc.*, No. 21-10238-

---

[7] Version 2 of the Limited Warranty states that "[t]he arbitration tribunal shall have the power to rule on any challenge to its own jurisdiction or to the validity or enforceability of any portion of the agreement to arbitrate." *Id.* Ex. 3 at 8.

WJM-AME, 2021 U.S. Dist. LEXIS 228899 (D.N.J. Nov. 29, 2021) (granting a motion to compel arbitration filed at the outset of the case under a Rule 56 standard).

The Court should evaluate this Motion under a Rule 12(b)(6) standard; no further discovery is necessary to determine arbitrability—particularly as it relates to the G30P and the claims of Plaintiffs Cicero, Sabu, Holmes, and Rzewuski. Although Plaintiffs did not identify the Arbitration Agreement in the Complaint or attach it as an exhibit, Plaintiffs incorporated it into the Complaint based on their allegations. That is, Plaintiffs claim to have reviewed the "Product's item details, descriptions, product specifications and features" as well as "the Product's packaging, labeling, [and] other information surrounding the Product" in conjunction with their purchases. Compl. ¶ 16; *see also id.* ¶¶ 26-27, 30, 111. Further, Plaintiffs admit to being aware of the Limited Warranty, as they claim to rely upon "warranty claim data" and further assert at least one claim that is contingent upon "the manufacturer ha[ving] made an express warranty." *Id.* ¶ 119. The Arbitration Agreement applicable to the G30P— contained in the Limited Warranty—was referenced on "the Product's packaging" and "labeling," and was further included within the "Product's packaging" in the box with the Product itself. Likewise, the Arbitration Agreement applicable to the G30LP—also contained in the Limited Warranty—was contained in the box or was otherwise disclosed to purchasers like Plaintiff Heymer through references to Segway's website and references to the Limited Warranty in the KickScooter's User Manual. Thus, a Rule 12(b)(6) standard applies.[8]

---

[8] Segway recognizes that, depending on the date of a consumer's purchase of a G30LP KickScooter, the Limited Warranty and Arbitration Agreement could have been provided or disclosed in one of two or three varying ways. Thus, if Plaintiff Heymer alleges he did not receive an Arbitration Agreement, Segway understands that a Rule 56 summary judgment standard *might* apply with certain narrow and targeted discovery being needed.

## IV.    ARGUMENT

### A.  The Federal Arbitration Act Applies To This Dispute.

The Court should enforce the Arbitration Agreements and compel Plaintiffs to arbitrate their claims.  The FAA, 9 U.S.C. § 1 *et seq.*, empowers courts to compel arbitration where an arbitration provision is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA governs cases like this one, where the Arbitration Agreement provides that it is entered into pursuant to the FAA.[9]  *See* Zhao Decl., Ex. 1, Limited Warranty at 6; *McGrath v. Doordash, Inc.*, No. 19-cv-05279-EMC, 2020 U.S. Dist. LEXIS 207491, at *12 (N.D. Cal. Nov. 5, 2020) (recognizing the FAA governs because the agreement "expressly provides that the FAA governs the Agreement"); *Ramirez v. LQ Mgmt., L.L.C.*, No. 2:19-CV-06507-ODW (JPRx), 2020 U.S. Dist. LEXIS 93975, at *5 n.3 (C.D. Cal. May 29, 2020) (same).  Additionally, "a transaction involving interstate commerce" falls within the scope of the FAA. *THI of Pa. at Mountainview, LLC v. McLaughlin*, No. 14-1616, 2015 U.S. Dist. LEXIS 59557, at *11 (W.D. Pa. May 6, 2015) (quoting 9 U.S.C. § 2).

Here, the Court should compel arbitration pursuant to the FAA.  First, there is no question that the FAA governs the Arbitration Agreements at issue.  This Arbitration Agreements expressly refer to the FAA, and the lawsuit concerns a transaction involving interstate commerce.  The parties to the transaction are residents of different states. Compl, at ¶¶ 11, 12.  Moreover, the Products were purchased via national retailers, are available for purchase online, and were inevitably transported across state lines. *Id.* at ¶¶ 30, 43; *see Barbour v. CIGNA HealthCare of N.J., Inc.*, No. 02-417 (JBS), 2003 U.S. Dist. LEXIS 26214, at *10 (D.N.J. Mar. 4, 2003) (recognizing that when "citizens of different

---

[9] The Arbitration Agreement states: "THIS AGREEMENT EVIDENCES A TRANSACTION IN INTERSTATE COMMERCE, AND THUS THE FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THIS PROVISION."  *See* Zhao Decl. Ex. 1, Limited Warranty at 6.

states contracted for the delivery of packages that had been or would be shipped interstate . . . the arbitration agreement was 'unquestionably' governed by the FAA" (quoting *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 292 (3d Cir. 2001)); *see also THI of Pa. at Mountainview,* 2015 U.S. Dist. LEXIS 59557, at *11 ("This is not a rigorous inquiry; in fact, the contract need only the slightest nexus with interstate commerce.") (quotation omitted). Thus, the FAA applies to the Agreements at issue.

### B. The Court Should Compel Arbitration Because The Agreements Are Valid And The Claims Are Within Their Scope.

"Both the Federal Arbitration Act ('FAA') and Delaware's Uniform Arbitration Act recognize the validity and enforceability of agreements to settle disputes through arbitration rather than by litigation in courts." *Payne v. Samsung Elecs. Am., Inc.*, No. N23C-03-193 FWW, 2024 Del. Super. LEXIS 114, at *7 (Super. Ct. Feb. 21, 2024). "The FAA 'establishes a liberal federal policy favoring arbitration.'" *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2017)). "Similarly, the public policy of Delaware 'favors resolution of disputes through arbitration.'" *Id.* (quoting *Graham v. State Farm Mut. Auto Ins. Co.*, 565 A.2d 908, 911 (Del. 1989)). Thus, pursuant to the FAA and sound principles of contract law, the Court should compel arbitration if a valid arbitration agreement exists.

### i. The Parties Have A Valid Arbitration Agreement.

"Before compelling a party to arbitrate under the FAA, [courts] must consider two 'gateway' questions, one of which is 'whether the parties have a valid arbitration agreement.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019)). In determining whether a valid arbitration agreement exists, courts "apply state-law principles of contract formation." *Bacon*, 959 F.3d at 600 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Moreover, because federal law recognizes a strong public policy in favor of arbitration,[10]

---

[10] The "principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (cleaned up); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987). The Third Circuit has expressly held that "[f]ederal law presumptively favors the enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*,

"'[n]othing short of a showing of fraud, duress, mistake' or some other compelling ground to invalidate

a contract,' 'will permit a court to preclude the enforceability of an agreement to arbitrate.'" *Robinson-*

*Simms v. Best Deal Auto Sales, LLC*, No. 23-518 (MN), 2024 U.S. Dist. LEXIS 227726, *7-8 (D. Del.

Dec. 17, 2024) (quoting *Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476, 481 (D. Del. Nov.

23, 2010)); *see also Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 483 (1989) (recognizing

that under the FAA "the party opposing arbitration carries the burden of showing" that an arbitration

agreement is not enforceable).

"Under Delaware law, contract formation requires mutual assent, meaning a complete meeting

of the minds of the parties." *Payne*, 2024 Del. Super. LEXIS 114, at *7 (citing *United Health Alliance,*

*LLC v. United Medical, LLC*, No. 7710-VCP, 2013 Del. Ch. LEXIS 289, 2913 WL 6383026, at *6 (Del.

Ch. Nov. 27, 2013)). "Establishing a meeting of the minds and mutual assent turns on the existence

of 'reasonable notice to each contracting party of the contractual terms.'" *Id.* (quoting *Noble v. Samsung*

*Elec. Am., Inc.*, 682 Fed. Appx. 113, 116 (3d. Cir. 2017)).[11]

---

183 F.3d 173, 178 (3d Cir. 1999). The FAA specifically "require[s] [the] [C]ourt to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement." *Concepcion*, 563 U.S. at 344 (quoting 9 U.S.C. § 4); *Silfee v. Auto. Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) (considering a party's motion to compel arbitration under section 4 on appeal, and recognizing that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement" (quoting 9 U.S.C. § 4)).

[11] Generally speaking, courts across the country applying potentially applicable law enforce in-the-box agreements. *See Debbie's Customized Staffing, Inc. v. Byline Bank,* No. 18 L 267, 2018 Ill. Cir. LEXIS 10135, at *6-9 (Ill. Cir. Ct. July 27, 2018) (enforcing a "clickwrap" agreement, noting the enforceability of certain "browsewrap" agreements, and explaining that "courts have based their decisions in clickwrap and browsewrap cases on reasoning developed through the earlier, factually analogous, shrinkwrap cases"); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (Cal. Ct. App. 2021) (explaining that courts have generally found shrinkwrap agreements to be enforceable "if consistent with the reasonable expectations of the consumer"); *Archer v. Grubhub, Inc.*, 490 Mass. 352, 361 (Mass. 2022) (stating that "[f]or there to be an enforceable contract, there must be both reasonable notice of the terms and a reasonable manifestation of assent to those terms," and further stating that "[r]easonable notice of a contract's terms exists even if the party did not actually view the agreement, so long as the party had an adequate opportunity to do so"); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1294 (N.D. Cal. 2018) ("the current trend of California courts has been

In this case, Plaintiffs' agreements to arbitrate are in the form of a "shrinkwrap agreement," or "in-box" contract. *See Vasadi*, 2021 U.S. Dist. LEXIS 228899, at *23-24. This is an enforceable type of contract that "set[s] forth contractual terms on or inside the packaging, which consumers are deemed to accept by opening or using the products." *Id.* at *24; *Payne*, 2024 Del. Super. LEXIS 114, at *7-8 (accepting "substantial authority" supporting the enforceability of "'shrinkwrap' agreements [and] inside the box agreements"). Courts in the Third Circuit have specifically found that these agreements are enforceable in the consumer setting. *See Vasadi*, 2021 U.S. Dist. LEXIS 228899, at *31. As multiple district courts in the Third Circuit have explained, "'shrinkwrap agreements' through which notice of contractual terms is provided on the exterior physical packaging containing the product are well-established under Third Circuit law." *Westerkamp v. Samsung Elecs. Am., Inc.*, No. 21-cv-15639 (JXN) (JRA), 2023 U.S. Dist. LEXIS 109433, *18 (D.N.J. June 26, 2023) (cleaned up) (quoting *Vasadi*, 2021 U.S. Dist. LEXIS 228899).[12] This is particularly true when an in-the-box agreement provides a purchaser with the option to "opt out" of arbitration, *id.* at *19-20, or where the agreement relieves claimants of arbitration costs.[13]

Here, Plaintiffs agreed to arbitrate when they received their KickScooters, obtained reasonable notice (at a minimum) of the Arbitration Agreement, and drove their KickScooters for months or years (Plaintiff Heymer since August 7, 2022, Plaintiff Rzewuski since January 1, 2025, Plaintiff Sabu since June 29, 2024, Plaintiff Holmes since June 30, 2021, and Plaintiff Cicero since April 17, 2023)

---

to enforce contracts even when consumers later receive the terms") (citing multiple California state court cases in support).

[12] As the Northern District of California noted when applying California law, product packaging that prominently and explicitly informs purchasers that they are subject to an arbitration agreement contained in an internal document provides the purchasers sufficient notice that they are subject to the arbitration provision. *See Samsung Galaxy*, 298 F. Supp. 3d at 1293-95.

[13] In *Beture v. Samsung Elecs. Am., Inc.*, the court found a clickwrap agreement enforceable based in part on a provision allowing the arbitrator to award attorneys fees to the prevailing party. No. 17-5757 (SRC), 2018 U.S. Dist. LEXIS 121801, at *23-24 (D.N.J. July 18, 2018). The Arbitration Agreement that Plaintiffs received are even more favorable because it provides Segway will pay for arbitration costs in certain matters regardless of which party prevails. Zhao Decl. Ex. 1, Limited Warranty at 7.

instead of returning them. *See* Compl. ¶¶ 8-15. As set forth above, and like in *Samsung Galaxy*, the G30P's packaging and unboxing process gave Plaintiffs' explicit notice of the arbitration agreement. The G30P is packaged in a box with a sticker notifying the purchaser that the "LIMITED WARRANTY AND ARBITRATION AGREEMENT SHALL APPLY," alongside a URL that takes the purchaser to a webpage with the KickScooter's Limited Warranty. This sticker is placed separately from other stickers on the box that contain non-contractual information pertaining to things like the battery and model information. The label gave Plaintiff, and every other purchaser of the KickScooter, clear notice that they were subject to the Arbitration Agreement. The label's phrasing that the "ARBITRATION AGREEMENT SHALL APPLY," is clear contractual language, and goes beyond the mere reference to applicable terms and conditions that was found sufficient in *Samsung Galaxy*. *See* 298 F. Supp. 3d at 1294. Moreover, the fact that this language was capitalized, bolded, and posted separately from other non-contractual information indicates that the contractual nature of the Limited Warranty was obvious, and not the kind of inconspicuous clause that a reasonable person would overlook. *See id.*

Thereafter, upon opening the KickScooter's packaging, the G30P Plaintiffs encountered a packet containing the Manufacturer's Limited Warranty, including the Arbitration Agreement. The Limited Warranty stated clearly on the front cover that it provided "SPECIFIC LEGAL RIGHTS," and just several pages later, contained the heading "Claims and Dispute Resolution" addressing the G30P Plaintiffs' agreement to arbitrate, agreement to file a lawsuit in small claims court, or to completely "opt out" by sending an email to optout@segway.com. Instead of returning the G30Ps or opting out of the Arbitration Agreements, the G30P Plaintiffs kept the KickScooters and apparently rode them for prolonged periods.

Similarly, the G30LP packaging contained the Arbitration Agreement or otherwise contained a Limited Warranty that stated on its face it did not apply while disclosing the existence of another

14

Limited Warranty to Plaintiff Heymer in the G30LP's User Manual, with additional references to www.segway.com on the G30LP's box. Any one of the applicable Limited Warranty's contained the Arbitration Agreement, and further provided that Plaintiff Heymer could have "opted out" of the Arbitration Agreement. Instead of returning his G30LP or opting out, Plaintiff Heymer, instead, kept the KickScooter for years with the Arbitration Agreement in place.

Under these circumstances, Plaintiffs received reasonable notice of the terms of the Arbitration Agreement and made a reasonable manifestation of assent to those terms by retaining and using their KickScooters for a substantial period of time and by failing to opt-out of arbitration.

Further, Third Circuit decisions demonstrate that the Arbitration Agreements are enforceable. For example, in *Westkamp*, the District of New Jersey enforced an in-the-box agreement where the "Plaintiff received reasonable notice of the arbitration agreement sufficient to bind Plaintiff to its terms." 2023 U.S. Dist. LEXIS 109433, at *18. This was because the exterior of a product box included notice that terms and conditions, including an arbitration agreement, applied. *Id.* at *19-20. Additionally, a booklet entitled "Terms and Conditions" inside the box "provided reasonable notice of the arbitration agreement," particularly as its title included "words that are 'unambiguously associated with contracts.'" *Id.* at *21 (quoting *Vasadi*, 2021 U.S. Dist. LEXIS 228899, *28).[14]

Similarly, the Delaware court ordered arbitration in *Payne*. There, the plaintiff, when purchasing a phone, "would have encountered the 'shrinkwrap' arbitration agreement notice on the exterior of the box; the arbitration notice included on the inside of the box, and the 'clickwrap' agreement when he attempted to activate his device." 2024 Del. Super. LEXIS 114, at *7–8. Although Plaintiff argued no valid arbitration agreement existed because he never saw the agreement, *id.* at *8, the court rejected the argument and held that a valid arbitration agreement existed. *Id.* at *17, 21-22.

---

[14] Like in that case, the title "Manufacturer's Limited Warranty" is unambiguously associated with contracts, prominently stating on the cover that it concerns "SPECIFIC LEGAL RIGHTS".

Plaintiff was on "inquiry notice" of the arbitration agreement. *Id.* The court further concluded that the language of the notices—appearing both on and in the box—"*individually* and in combination, provided [plaintiff] with reasonably conspicuous notice of contract terms to support mutual assent to the arbitration agreement." *Id.* at *22 (emphasis added) (citation omitted).

Again, the circumstances in this case are similar to those in which courts routinely enforce in-the-box arbitration agreements. Plaintiffs admit they were aware of "the Products' labeling, packaging, or online marketing" in conjunction with their purchases. Compl. ¶ 16. The G30P exterior packaging outwardly stated that an "Arbitration Agreement Shall Apply" and included a URL where Plaintiffs could have reviewed its terms. And the G30Ps' additional packaging contained the Limited Warranty and Arbitration Agreement in a prominent manner that required Plaintiffs to open it in order to access assembly components. Similarly, the G30LP either contained the applicable product insert (Limited Warranty) or otherwise made clear that the Limited Warranty in the box did not apply, with additional references in the box directing purchasers to Segway's website where the Limited Warranty and Arbitration Agreement could be viewed. Plaintiffs received reasonable notice, if not actual notice, of the Arbitration Agreements, making them enforceable without an "opt out" within 30 days of purchase. Plaintiffs did not opt out, and a valid and enforceable agreement to arbitrate exists.

### ii.    The Claims Fall Within The Scope Of The Arbitration Agreement.

The second "gateway" question considers whether "the specific dispute falls within the substantive scope of that [arbitration] agreement." *Robinson-Simms*, 2024 U.S. Dist. LEXIS 227726, at *6 (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998)). In determining whether a dispute that contains several claims falls within the scope of the arbitration agreement, a "court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (citing *Painewebber Inc. v. Hofmann*, 984 F.2d 1372, 1376-77 (3d Cir. 1993)). In doing so, "there is a presumption in favor of arbitrability," and a

motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

Here, it is undeniable that the claims presented by Plaintiffs fall within the scope of the arbitration agreements. The language of the arbitration agreement states, in relevant part, as follows:

> SEGWAY AND YOU AGREE THAT ALL CLAIMS OR DISPUTES ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT, WHETHER BASED IN CONTRACT, TORT, STATUTORY, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL THEORY, AND ALL CLAIMS THAT ARE SUBJECT OF A PURPORTED CLASS ACTION LITIGATION THAT YOU ARE NOT A MEMBER OF THE CERTIFIED CLASS, SHALL BE RESOLVED THROUGH ARBITRATION . . . .

Zhao Decl., Ex. 1, Limited Warranty at 6; *see also* Zhao Decl., Ex. 2 at 6; Ex. 3 at 7; Ex. 4 at 6.

Plaintiffs' claims relate to the sale, condition, or performance of the product, and Plaintiffs' claims fall within "contract, tort, statutory, fraud, [or] misrepresentation," or of course "any other legal theory." Therefore, all claims asserted in this case fall within the scope of the Arbitration Agreement.

### C. The Court Should Also Dismiss The Class Allegations Because The Arbitration Agreements Require Claims To Be Pursued Individually.

In addition to agreeing to arbitrate their claims against Segway, each Plaintiff also agreed they "MAY ARBITRATE CLAIMS AGAINST NINEBOT AND SEGWAY ONLY IN [THEIR] INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF, A CLASS REPRESENTATIVE, OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING." *See* Zhao Decl., Ex. 1, Limited Warranty at 6. More specifically, Plaintiffs agreed that "[a]ny such arbitration shall not be combined or consolidated with a claim or dispute involving any other person's or entity's product or claim or dispute, and specifically, without limitation of the foregoing, shall not under any

circumstances proceed as part of a class action or arbitration." *Id.*; *see also* Zhao Decl., Ex. 2 at 6; Ex. 3 at 8; Ex. 4 at 6. This agreement to waive class status is valid and enforceable, and the Court should enforce that agreement by dismissing the class claims with prejudice.

The FAA requires courts to enforce arbitration agreements "in accordance with the terms thereof." 9 U.S.C. § 4. Additionally, the Supreme Court has repeatedly enforced class waivers. *See Concepcion*, 563 U.S. 333. In fact, the Supreme Court has determined that a court "may not compel arbitration on a classwide basis" even "when an agreement is 'silent' on the availability of such arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)). The Third Circuit has similarly enforced arbitration class waivers. *See, e.g., Litman v. Cellco P'ship*, 655 F.3d 225, 231 (3d Cir. 2011) (holding that an arbitration clause that "requires individual arbitration and forecloses class arbitration" must "be enforced according to its terms."); *Siperavage v. Uber Techs., Inc.*, No. 20-12265, 2021 U.S. Dist. LEXIS 122002, at *10 (D.N.J. June 30, 2021); *Coiro v. Wachovia Bank, N.A.*, No. 11-3587, 2012 U.S. Dist. LEXIS 24508, at *10 (D.N.J. Feb. 27, 2012); *Shubert v. Well Fargo Auto Fin., Inc.*, No. 08-3754 (NLH), 2008 U.S. Dist. LEXIS 105198, at *15, 18 (D.N.J. Dec. 31, 2008). Here, the Court should enforce the Arbitration Agreements pursuant to their terms and order individual arbitration, not arbitration as a class.

### D. The Court Should Stay This Case And All Deadlines Pending Arbitration Because Doing So Is Mandated By The FAA.

When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, section 3 of the FAA compels the court to stay the proceeding. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); 9 U.S.C. § 3 (the Court "shall . . . stay . . . the action").

Here, because a valid, enforceable, and irrevocable arbitration agreement exists between the parties, and the dispute falls within the scope of the agreement, this case should be sent to arbitration and the pending litigation before this Court should be stayed. 9 U.S.C. § 3.

18

4923-0405-1065\2

In addition, while the Court is considering Defendant's Motion to Compel Arbitration, the Court should stay all other deadlines to comply with the "explicit statutory command" to do so under section 4. *Fuller v. Cabinetworks Mich., LLC*, No. 4:24-CV-01618, 2025 U.S. Dist. LEXIS 17276, at *9 (M.D. Pa. Jan. 31, 2025). That is, the Third Circuit has stated "that 'after a motion to compel arbitration has been filed, the court must refrain from further action until it determines arbitrability.'" *Id.* at *11 (quoting *Silfee v. Auto. Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017)). In sum, now that Defendant's Motion to Compel Arbitration has been filed, the parties and Court must solely focus on determining arbitrability so "the parties can get on with the merits of their dispute in the right forum." *Id.* at *16 (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)).[15] And this is particularly true considering that Plaintiff filed this case as a putative class action. *See Morales v. Lexxiom, Inc.*, No. CV 09-6549 SVW (DTBx), 2010 U.S. Dist. LEXIS 151809, at *30 (C.D. Cal. Jan. 29, 2010) (staying claims in a putative class action because the outcome of arbitration proceedings could have a substantial impact on remaining claims). Defendant therefore requests as part of its

---

[15] This approach is also appropriate under Rule 6 of the Federal Rules of Civil Procedure. Under Rule 6, "the court may, for good cause, extend the time [within which a party must act] . . . with or without a motion . . . , or if a request is made[] before the original time or its extension expires." Fed. R. Civ. P. 6(b). Here, this request is made "before the original time or its extension expires," and good cause exists, and Segway respectfully requests that it be granted an extension of time to file a responsive pleading or to otherwise move to dismiss this case on alternate grounds to those presented herein. Extending the time to respond is also appropriate because "[t]he right to arbitrate a dispute is subject to waiver." *Abebe v. Yum! Brands, Inc.*, No. 4:23-cv-682, 2024 U.S. Dist. LEXIS 218306, *10 (E.D. Tex. Dec. 3, 2024). Waiver can be found if a party substantially invokes the judicial process, *id.* at *11, although this is not the policy of the Third Circuit. *Keystone Auto. Indus. v. Gorgone*, No. 21-0780, 2021 U.S. Dist. LEXIS 209064, *10-12 (E.D. Penn. Oct. 29, 2021). Segway has preserved its right to arbitrate by filing the pending motion, and as such, Segway should not be required to invoke the judicial process further by answering the complaint or by filing a motion to dismiss that is beyond the scope of this Motion to Compel Arbitration. *Abebe*, 2024 U.S. Dist. LEXIS 218306, at *11-12. Regardless, the filing of an answer is not the touchstone of waiver in the context of arbitration. *Keystone Auto. Indus.*, 2021 U.S. Dist. LEXIS 209064 at *11. "One of the primary goals of arbitration is to avoid the expense of litigation," supporting the conclusion that no answer or further motion to dismiss should be filed until after the issue of arbitration is resolved. *Abebe*, 2024 U.S. Dist. LEXIS 218306, at *12. Thus, out of an abundance of caution, Segway respectfully requests that it be granted 21 days to file a further response to the Complaint, including an Answer or Pre-Answer Motion, in the event the Court denies its Motion to Compel Arbitration.

requested relief herein, that its response to the Complaint or its obligation to submit or respond to any other filings be stayed while its Motion to Compel Arbitration is being decided. *See Fuller,* 2025 U.S. Dist. LEXIS 17276, at *13-14 ("*Silfee* instructs that district courts may 'bypass' no part of Section 4's 'sequencing,' whether that deviation comes at the first or second path identified in *Guidotti.*").

## V.  CONCLUSION

The FAA applies; the Arbitration Agreement between Plaintiffs and Defendant is valid, enforceable, and irrevocable; and the claims in Plaintiffs' complaint fall within its scope and may not be pursued on a class basis. The Court should therefore order that Plaintiffs' claims be arbitrated on an individual basis rather than litigated as a class, and the pending lawsuit should be stayed pending arbitration. In addition, any other deadlines or requirements that do not bear on resolving Defendant's Motion to Compel Arbitration should be stayed pending adjudication of the present Motion.

## VI.  STATEMENT REGARDING DELAWARE L.R. 7.1.1

As required by Local Rule 7.1.1., counsel for movant avers that she has conferred with counsel for Plaintiffs and that a reasonable effort, including oral communications, has been made to reach agreement with the opposing party on the matters set forth in the motion.

Dated:  November 17, 2025

 */s/ Alessandra Glorioso*
Alessandra Glorioso (DE Bar No. 5757)
Dorsey & Whitney (Delaware) LLP
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Telephone: 302-425-7171
Email: glorioso.alessandra@dorsey.com

Adam C. Buck (pro hac vice)
Dorsey & Whitney LLP
111 South Main Street, Suite 2100
Salt Lake City, UT 84111-2176
Telephone: 901-933-7360
Email: buck.adam@dorsey.com

Kirk Schuler (pro hac vice)
Dorsey & Whitney LLP

801 Grand Avenue, Suite 4100
Des Moines, IA 50309
Telephone: (515) 697-3622
Email: schuler.kirk@dorsey.com

Anna Boyle (pro hac vice)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 492-6639
Email: boyle.anna@dorsey.com

*Attorneys for Defendant Segway Inc.*

21