# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE SEGWAY SCOOTER RECALL LITIGATION | C.A. No. 25-cv-00369-GBW CONSOLIDATED |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ALL DEADLINES AND PROCEEDINGS

Dated: November 25, 2025

**COOCH AND TAYLOR P.A.**

R. Grant Dick IV (#5123)
Kevin D. Levitski (#7228)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3800
Email: gdick@coochtaylor.com
          klevitsky@coochtaylor.com

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND ......................................................................... 1

III. LEGAL STANDARDS .................................................................................. 9

IV.  DEFENDANT'S MOTION SHOULD BE DENIED IN FULL .................... 13

  A.  Defendant Failed To Meet Its Burden To Prove A Contract Containing An Arbitration Agreement Exists With Any Plaintiff ................................................ 13

    1.   Defendant Failed To Provide Conspicuous Notice ................................... 13

    2.   Defendant Failed To Provide Notice Of Bilateral Terms ......................... 15

    3.   The Notice Failed To State What Conduct Constitutes Acceptance ...................... 18

    4.   Defendant Did Not Provide Opportunity To Inspect And Return ......................... 20

V.   CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Am.'s Test Kitchen, LP,*
 680 F. Supp. 3d 31 (D. Mass. 2023)................................................................. 13, 18

*Altronics of Bethlehem, Inc. v. Repco, Inc.,*
 957 F.2d 1102 (3d Cir. 1992) ............................................................................ 18

*Ballou v. Asset Mktg. Servs., LLC,*
 46 F.4th 844 (8th Cir. 2022) ....................................................................... 12, 20

*Chamberlain v. LG Electronics U.S.A., Inc.,*
 2017 WL 3084270 (C.D. Cal. June 29, 2017)............................................... 12, 20

*Cullinane v. Uber Techs., Inc.,*
 893 F.3d 53 (1st Cir. 2018)................................................................................ 14

*Doughtery v. C.R. Bard, Inc.,*
 2012 WL 2940727 (E.D. Pa. July 18, 2018) ..................................................... 18

*Focus Fin. Partners, LLC v. Holsopple,*
 241 A. 3d 784 (Del. Ch. 2020) ......................................................................... 11

*Howard v. Ferrelgas Partners, L.P.,*
 748 F.3d 975 (10th Cir. 2014) .......................................................................... 12

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Lit.,*
 298 F. Supp. 3d 1285 (N.D. Cal. Mar. 30, 2018) ....................................... 11, 16

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.,*
 957 F.3d 1038 (9th Cir. 2020) .......................................................................... 10

*Kaufman v. Am. Exp. Travel Trlated Servs. Co., Inc.,*
 2008 WL 687224 (N.D. Ill. Mar. 7, 2008) .......................................... 13, 16, 19, 20

*Lewis v. Samsung Elec. Am., Inc.,*
 2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023)..................................................... 13

*Nelson v. Anheuser-Busch Cos., Inc.,*
 2025 WL 1000796 (D. Del. Apr. 3, 2025) ........................................................... 9

*Noble v. Samsung Elecs. Am, Inc.,*
 682 Fed. Appx. 113, 116 (3d Cir. 2017)................................................... 15, 16, 17

*Norcia v. Samsung Telecommunications Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ..............................................................Passim

*Pa. Emp.m Benefit Trust Fund v. Zeneca, Inc.*,
   710 F. Supp. 2d 458 (D. Del. May 6, 2010) ..................................... 10, 11

*Payne v. Samsung Electronics Am., Inc.*,
   2024 WL 726907 (Del. Sup. Ct. Feb. 21, 2024)......................... 13, 18, 19

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
   388 U.S. 395 (1967) .................................................................................. 10

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) ................................................................ 14

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
   939 F.2d 91 (3d Cir. 1991) ...................................................................... 12

*Theodore v. Uber Techs., Inc.*,
   442 F. Supp. 3d 433 (D. Mass. Mar. 3, 2020) .................................. 13, 14

*Vasadi v. Samsung Electronics Am., Inc.*,
   2021 WL 5578736 (D.N.J. Nov. 29, 2021) ....................................Passim

*Weiss v. Nw. Broad. Inc.*,
   140 F. Supp. 2d 336 (D. Del. Apr. 18, 2001) ....................................... 10

*Westerkamp v. Samsung Elecs. Am., Inc.*,
   2023 WL 4172967 (D.N.J. June 26, 2023)....................................... 18, 19

## Other Authorities

U.C.C. § 2-207 ............................................................................................ 12

## I. INTRODUCTION

Defendant seeks to compel consumers that bought KickScooters from third-party vendors to arbitration because of a purported sticker on the outside packaging of the Products and a Limited Warranty document inside the box. First, it is undisputed that Plaintiffs did not see or have notice of any of these terms at the time of purchase. Instead, Defendant wishes to bind them to arbitration based on developing law surrounding "shrinkwrap" agreements. But none of the cases Defendant relies on help its position. Arbitration is a matter of contract, requiring conspicuous notice of terms, disclosure of what conduct constitutes assent (and the manifestation of assent), notice of bilateral terms, and, in the context of shrinkwrap agreements, an opportunity to return the product without penalty. Defendant fails to satisfy any of these requirements. Incredibly, for one set of Products, the G30LP KickScooters, Defendant concedes that 1) the packaging did not contain a sticker that forms the basis of its motion, and 2) the Limited Warranty inside did not contain an arbitration agreement. Undeterred, Defendant wishes to quash these putative class actions before they begin by forcing all of its consumers to arbitration without any evidence of assent to arbitration. Without contract formation, Plaintiffs are entitled to their day in court.

## II. FACTUAL BACKGROUND

**Plaintiffs' Purchases:** Plaintiffs are consumers from California, New York, Massachusetts, and Illinois. Plaintiff Cicero, while residing in Massachusetts, purchased a Segway Ninebot Max G30P from Amazon.com on April 17, 2023. Krivoshey Decl, Ex. 1, Cicero Decl. ¶ 4. Plaintiff John Sabu, while residing in California, purchased a Segway Ninebot Max G30P from Amazon.com on June 29, 2024. *Id*., Ex. 5, Sabu Decl. ¶ 4. Plaintiff Holmes, while residing in New York, purchased a Segway Ninebot Max G30P from academy.com on June 30, 2021. *Id*., Ex. 3,

Holmes Decl. ¶ 4.[1] Plaintiff Rzewuski, while residing in Illinois, purchased a Segway Ninebot Max G30P from Best Buy on or around January 1, 2025. *Id.*, Ex. 4, Rzewuski Decl. ¶ 4. Plaintiff Heymer, while residing in California, purchased a Ninebot MAX G30LP from Best Buy on or around August 7, 2022. *Id.*, Ex. 2, Heymer Decl. ¶ 4. None of the Plaintiffs purchased their products directly from Segway. There is nothing in the record suggesting that any Plaintiffs have ever visited Segway's website.

**Product Packaging:** The Products are shipped in large boxes. At Defendant's urging, Plaintiffs' counsel has reviewed many "unboxing" videos of the Products available on YouTube to provide the Court with basic images of what the Products typically look like when they are delivered to customers. Krivoshey Decl. ¶ 2. Some Products are covered in protective packaging tape, thereby concealing all information that may otherwise be provided on the outside box, including any stickers thereon. *Id.* It makes no difference what stickers, or other terms, Defendant may place on the exterior box – consumers could not see them. *Id.*

G30P Kickscooter Boxes: According to Defendant, at some point within the class period, G30P Kickscooter boxes contained a sticker *somewhere* on the outside of the box stating "NINEBOT EKickscooter Max G30P LIMITED WARRANTY AND ARBITRATION AGREEMENT SHALL APPLY AVAILABLE AT: https://www.segway.com/max-warranty." Zhao Decl. ¶ 11 [D.I. 41.] Defendant provides no evidence of *when* within the class period this sticker may have appeared on the Product boxes, or whether the sticker would have appeared on the boxes shipped to Plaintiffs. Defendant also submitted zero evidence of what consumers would have seen during the class period if they visited https://www.segway.com/max-warranty.

---

[1] The Declarations of Cicero, Heymer, Holmes, Rzewuski, and Sabu are attached as Exhibits 1 through 5 to the *Declaration of Yeremey Krivoshey in Support of Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration and Stay all Deadlines*, filed contemporaneous herewith.

Krivoshey Decl. ¶¶ 12-14. For instance, as to Plaintiff Holmes, who purchase the Product in *June* 2021, the landing page *was not even yet active*, as Mr. Zhao states that the page did not go live until *November* 2021. *See id*. ¶ 12-14; Zhao Decl. ¶ 20. Accordingly, it is not possible for Plaintiff Holmes to have seen anything on the putative landing page because it did not exist at the time Plaintiff Holmes purchased the Product. Mr. Zhao provides specifics of when three separate segway websites were active but is conspicuously silent as to when the putative website on the box - https://www.segway.com/max-warranty - was active, or what it contained. *See* Zhao Decl. ¶ 20.

Further, Defendant is silent about *where* on the box this sticker appears. The sticker is *not* on the front of the box or top of the box, or anywhere in a conspicuous place where consumers may see it. Krivoshey Decl ¶ 3.[2] Given that the boxes are massive, there is no evidence of how big the stickers are, or what size font is used. *See id*. No Plaintiff has ever seen such a sticker on the packaging of their Products. *See* gen. Plaintiffs' Decls. ¶¶ 7. Based on Defendant's submission, it appears that the relevant sticker is one of several *other* stickers somewhere on the box placed in close proximity, does not use contrasting font or coloring as compared to those other stickers, and does not otherwise contain any images or graphics that would grab a consumer's behavior. *See* Zhao Decl. ¶ 11. The stickers are not placed over any seam, handle, or opening of the box, such that a consumer would not necessarily have to see, cut, break, or interact with the sticker when opening the box. Krivoshey Decl. ¶¶ 4-5. The sticker appears to be located on the *side* of the box, is surrounded by other stickers, is very small in comparison to the other text and graphics on the box, and is inconspicuous. *Id*.

G30LP Kickscooter Boxes: Defendant concedes G30LP Products "do not identify the

---

[2] For instance, in one of the unboxing videos Defendant cites, the video displays the entirety of the front and top of the box. Krivoshey Decl. ¶ 3. No sticker is apparent anywhere in the video. *Id*. In the other video cited by Defendant, the box is shown from a different angle. *Id*. ¶ 4. Again, the sticker is not present anywhere on the front or top of the box that is used as the "door." *Id*.

Limited Warranty or the Arbitration Agreement by name on the outside of the box." Zhao Decl. ¶ 16. Thus, it is *undisputed* that Plaintiff Heymer's Product packaging *did not* include the referenced arbitration sticker on his box, as he purchased a Ninebot MAX G30LP. Instead, G30LP Kickscooter boxes purportedly contain a sticker with tiny text, buried underneath a slew of product specifications, saying "Please visit www.segway.com for further information." *Id*.

**User Manuals:** The Products come with a User Manual. It is undisputed that the User Manual does not contain an arbitration provision. According to Defendant, page four of the User Manual states "Limited Warranty." *Id*., Ex. 5. No other information is provided in the User Manual about the limited warranty, where to find it, or that it may contain an arbitration provision. *See id*. There are stray references to Segway's website www.segway.com in the User Manual, but never with reference to the Limited Warranty or an arbitration provision. *See id*.

**Limited Warranty Booklets:** According to Defendant, *some* of the Products' boxes contained a Manufacturer's Limited Warranty booklet *inside*.

<u>G30LP Kickscooter Boxes</u>: Defendant states that "at certain times," "G30LP KickScooters have included product inserts that include a Limited Warranty, including an Arbitration Agreement." *Id*. ¶ 18. It is Mr. Zhao's "understanding" that for "*certain units* produced in or about 2020 and *possibly* 2021," the Products contained a Limited Warranty with an arbitration clause that applied to U.S. customers. *Id*. (emphasis added). There is no information about how many units contained the warranty booklets. It is possible that warranty booklets were not included *at all* in 2021. *Id*. During this same period, *some* other G30LP KickScooters may have contained a different version of the Limited Warranty. *Id*.

"Following this period, G30LP KickScooters appear to have been packaged with a Limited Warranty that *expressly stated it did not apply* to purchasers in the United States, and instead

4

applied to purchasers in Europe, the Middle East, and Africa" (the "Foreign" Limited Warranty) *Id*. ¶ 19. The Foreign Limited Warranty has not been produced into evidence. Nor does Mr. Zhao assert that the Foreign Limited Warranty contained an arbitration agreement.

Accordingly, it is undisputed that between 2022 through 2025, G30LP KickScooters did not contain any booklet with an arbitration provision inside the Product boxes. It is also undisputed that for Plaintiff Heymer, who purchased his G30LP in August 2022, the box did not come with a booklet inside containing an arbitration provision. Thus, for Plaintiff Heymer, it is undisputed that the box he received did not contain either a sticker mentioning arbitration or a booklet inside the box containing an arbitration provision.

G30P Kickscooter Boxes: Defendant contends that G30P KickScooters come with a "packet" inside the box that contains a tool, fasteners, reflective strips, and a booklet consisting of the KickScooter's Quick Start guide, a User Manual, and a Limited Warranty. As can be seen in one unboxing video Defendant cites, the first page of that booklet is *not* the Limited Warranty, but rather a "Safety Notice" that Defendant omits entirely from its description. Krivoshey Decl. ¶ 6. The Safety Notice, the very first page consumers would see, says nothing about the Limited Warranty, or that the pages below it may contain any contractual terms and conditions. *Id*. In the second unboxing video, the Safety Notice appears to be missing. Instead, consumers in the second video would see the first page of the "Quick Start" guide. *Id*. ¶ 7. Defendant makes no argument that the Quick Start guide has any mention of the Limited Warranty, any terms or conditions, or an arbitration agreement. In this situation, a reasonable consumer could very well put the booklet aside and would have no reason to know that a Limited Warranty is contained below, or that any arbitration provision might apply. But even if they did not stop there, immediately after the Quick Start guide, customers are presented with a large Thank You card (in some situations, the Thank

You card may appear *first*), as shown in one of the unboxing videos Defendant cites. *Id*. ¶ 8. The Thank You card states, "Before you take your new ride out for a spin, let's review the safety protocol. Always wear a helmet, read the user manual and be sure to read 'Riding Safety' on the Segway-Ninebot app to unlock key product features." *Id*. ¶ 9. The Thank You card makes no reference to the Limited Warranty, no reference to arbitration, and no mention that customers should review any terms and conditions anywhere "[b]efore you take your new ride out for a spin." *Id*.

If consumers are scrupulous enough to find the Limited Warranty pamphlet yet further below, it still fails to give consumers any hint that by using or keeping the Products they might be bound by an arbitration provision. The front page of the Limited Warranty does not say that consumers can find terms and conditions inside or any other bilateral terms. Zhao, Ex. 1. There are no words signifying what action, if any, would constitute assent to any terms. The front page states that the Limited Warranty "describes the service available to you in the event your Product requires warranty service, and you may have additional protections under your local laws. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHT WHICH VARY FROM COUNTRY TO COUNTRY AND STATE TO STATE." *Id*. Defendant's website is only mentioned on the front page so consumers can see "the latest contact information." *Id*. Pages two and three provide a high-level overview of the Limited Warranty. *Id*. There is no mention of arbitration or any table of contents that may imply that an arbitration provision might apply. *Id*. Consumers would have to flip all the way to page six before stumbling on a section called "Claims and Dispute Resolution." *Id*. Notably, there is nothing about that title suggesting that the claims and dispute resolution section applies to anything other than *warranty* claims. *Id*. The text of the paragraph containing the arbitration clause is in identical font,

size, and color as the paragraph immediately before it. *Id*.

None of the Plaintiffs have ever seen or been aware of the Limited Warranty booklet or any arbitration provision that purportedly may have come as part of the package or sale of the Products. Plaintiffs Decls. ¶¶ 7-10.

**Online Terms:** Defendant argues that consumers who visited www.segway.com would have been on notice of the arbitration provision at issue here. Not so. There is no arbitration provision on that page. Instead, a consumer would have to scroll to the very bottom of the page (which is not visible without scrolling) and find a small greyed-out hyperlink – one of about two dozen such hyperlinks – titled "Warranty Policy." Krivoshey Decl. ¶¶ 10-11. Clicking on the link takes consumers to a page that instructs consumers to select a particular KickScooter before being presented with a warrant policy. *Id*. Through several more clicks, only then would a consumer see the Limited Warranty attached to Mr. Zhao's declaration. *Id*.

If consumers happened to see the relevant sticker on the box of G30P Kickscooters, and then take out their phones or go on their computers and type in https://www.segway.com/max-warranty/, the site referenced on the sticker, they would land on a page that makes zero reference to arbitration or any terms and conditions.[3] Instead, the page only states "Warranty Information … Below you will find our most up-to-date warranties," followed by a list of product names. Krivoshey Decl. ¶ 12. By clicking on "Ninebot by Segway Kickscooter," they would be taken to the Limited Warranty, which, as discussed above, does not mention that terms and conditions binding consumers may be contained inside, or any method for acceptance, and does not mention arbitration anywhere on the front or first few pages of the document.

---

[3] As discussed above, this website appears to not have been live when Plaintiff Holmes purchased the Product, and then went offline again later. Krivoshey Decl. ¶¶ 12-14. Defendant has not submitted any evidence of when this website was in fact operational.

It appears that *after* filing its initial motions to compel arbitration in these consolidated actions, Defendant changed the landing page for https://www.segway.com/max-warranty/ to instead route to a new page tailored to KickScooter G30LP and KickScooter G30P warranty information. Krivoshey Decl. ¶ 13. That is not what any consumer would have seen during the class period. *Id*. ¶ 14. Instead, the landing page for https://www.segway.com/max-warranty routed to https://store.segway.com/warranty-information when counsel for Plaintiffs started working on oppositions to Defendant's initial motions to compel arbitration in these consolidated cases. *Id*. As of June 20, 2025, https://www.segway.com/max-warranty went to a blank white page without any information. *Id*.

Mr. Zhao also states that "from September 2024 to the present," consumers purchasing G30LP KickScooters on Segway's website would see a reference to arbitration at checkout. Zhao Decl. ¶ 22. No Plaintiff purchased Products from Segway's website, so that checkout screen cannot be the basis of the motion to compel arbitration, as it is undisputed that no Plaintiff ever visited that page. Mr. Zhao also states that Amazon's website "at least at certain times [] has provided access to the Limited Warranty and Arbitration Agreement which Segway believed was applicable to the G30LP KickScooter." *Id*. There is no indication of when in the checkout process such Limited Warranty was available, how it was displayed, where it was displayed, or whether consumers had to acknowledge the document or terms in any fashion. Defendant does not even argue that any Plaintiff is subject to arbitration via Amazon.

**Segway's Return Policy:** Segway has a strict no-return policy for all Products purchased from any vendor other than Segway itself. On its website, Segway states, "If you purchased a Segway and/or Ninebot branded product from other persons … Return: Store.segway.com will NOT process and/or accept return of any such product." Krivoshey Decl. ¶ 15. Instead, all such

customers are told to contact their individual sellers, who may or may not have return policies. *Id*.
For customers that buy from Segway directly, they do not get to return items free of charge either.
First, customers may *cancel* an order between one to six and a half *hours* after checkout, depending
on the time of year. *Id*. To make it more difficult to cancel, Segway states that "the cancel order
button" will not appear until thirty minutes after checkout. *Id*. If the Product has already shipped,
Segway only allows returns if the Products are in their original packaging and *unopened*. *Id*. Thus,
a customer that opens the box, happens to find the Limited Warranty, and, unhappy with the terms,
decides to return the Product as a result will not be allowed to return it. *Id*. For those customers
who decide to return the Product without even opening the packaging, they can return the item
within 30 days of receipt, but only after obtaining a Return Merchandise Authorization from
Segway , paying for shipping (which could easily be hundreds of dollars due to the size of the
Products), *and paying a restocking fee. Id*. In other words, by requiring that customers seeking to
return the Products pay all shipping costs and a restocking fee, Segway has ensured that no
unhappy customer would ever return the Products as it would almost certainly cost more to return
the Products than the Products' sales prices.

## III. LEGAL STANDARDS

"A district court must stay judicial proceedings and compel arbitration if it determines that:
(1) a valid arbitration exists; and (2) the parties' dispute falls within the scope of the arbitration
agreement." *Nelson v. Anheuser-Busch Cos., Inc*., 2025 WL 1000796, at *3 (D. Del. Apr. 3, 2025)
(Williams, J.). "Because arbitration is treated as an affirmative defense, the burden falls on the
party seeking to compel arbitration to establish these requirements." *Vasadi v. Samsung
Electronics Am., Inc*., 2021 WL 5578736, at *6 (D.N.J. Nov. 29, 2021). "[T]o determine whether
a valid arbitration agreement exists, the Court applies state-law principles of contract formation to

decide if the parties agreed to arbitration." *Nelson*, 2025 WL 1000796, at *3 (internal quotations omitted). "[W]here it is not facially apparent the parties agreed to arbitrate or one party disputes it is bound by an arbitration agreement, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate." *Vasadi*, 2021 WL 5578736, at *7 (internal quotations omitted).

While there is a federal policy favoring arbitration, it does not come into play until and unless the Court first finds that the Parties have in fact formed a contract to arbitrate. *See, e.g., Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1041–42 (9th Cir. 2020) ("the federal policy favoring arbitration … plays a role only after a court has been satisfied that an arbitration agreement was 'validly formed'"). "Accordingly, we must determine whether a contract *ever* existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator." *Id.* (emphasis in original, internal quotation omitted). These principles are consistent with the "equal footing" rule, which requires arbitration agreements to be "as enforceable as any other contract, *but not more so.*" *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404, n.12 (1967) (emphasis added).

The question then becomes what state law to apply to the question of contract formation. "A federal district court sitting in diversity must apply the choice of law rules of the state in which it sits to determine which state's law governs the controversy before it." *Weiss v. Nw. Broad. Inc.*, 140 F. Supp. 2d 336, 342 (D. Del. Apr. 18, 2001). "Delaware's choice of law approach entails a two-pronged inquiry." *Pa. Emp.m Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. May 6, 2010). "First, it is necessary to compare the laws of the competing jurisdictions to determine whether the laws actually conflict on a relevant point." *Id.* "While no reported Delaware cases establish that an actual conflict must exist, the Third Circuit, as well as other federal and

state courts within Delaware, have concluded that Delaware's choice of law rules require that an actual conflict exist prior to engaging in a complete conflict of laws analysis." *Id*. "Second, if it is determined that an actual conflict exists, Delaware employs the 'most significant relationship' test, as set forth in the Restatement (Second) of Conflict of Laws (the 'Restatement'), in order to determine which law should apply." *Id. See also Focus Fin. Partners, LLC v. Holsopple*, 241 A. 3d 784, 804-05 (Del. Ch. 2020) (delineating factors to consider under "most significant relationship" test).

Here, Defendant's motion applies Delaware law to the issue of contract formation without any discussion of choice of law. Defendant makes no attempts to evaluate whether a conflict exists amongst the various states, or whether one state may have a more significant interest than any of the others. Before discussing conflict, Plaintiffs note that it is obvious that Delaware does *not* have the most significant interest here. Plaintiffs are residents of California, New York, Massachusetts, and Illinois, they purchased their products while located in those states, they lost money as a result in those states, the Products were shipped to them in those states, and all interactions Plaintiffs had with the Products and any packaging those Products came in occurred in those states. No material conduct whatsoever occurred in Delaware. Rather, these actions are pending in Delaware because Defendant is incorporated here and this Court has general jurisdiction over Defendant. Defendant's United States headquarters appears to have been in California during the class period and then relocated to Texas. *See* Compl., Dkt. 34 ¶ 18. Defendant may have a decent argument that *California* may have the most significant relationship because Defendant was headquartered there during the class period, and some Plaintiffs are located there.

Typically, in consumer class actions where a defendant seeks to compel arbitration, the parties "agree that the law of each Plaintiff's home state controls." *In re Samsung Galaxy*

*Smartphone Mktg. & Sales Practices Lit.*, 298 F. Supp. 3d 1285, 1289 (N.D. Cal. Mar. 30, 2018). Thus, there are scant decisions comparing Delaware law concerning "shrinkwrap" agreements with California, New York, Illinois, and Massachusetts law.

Ultimately, what state law controls here does not matter, as no contract was formed under the laws of *any* of the relevant states: Delaware, California, New York, Illinois, and Massachusetts. However, the laws of these states as to "shrinkwrap" agreements differ significantly. For instance, Judge Michael W. Fitzgerald of the Central District of California held that a "shrinkwrap" agreement on the outside of the box, and inside the box, of a cellular telephone would *not* bind California consumers under California law, but *would* bind consumers in other states like New York, Washington, and Florida under those states' laws. *Chamberlain v. LG Electronics U.S.A., Inc.*, 2017 WL 3084270, at *5 (C.D. Cal. June 29, 2017). That is because California courts "have made clear that silence alone does not constitute assent." *Id*. (citing *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017)). There is also significant disagreement amongst the various states, and a Circuit split, of whether a buyer in a consumer transaction is the "offeror" or the "offeree," and whether U.C.C. § 2-207 applies to shrinkwrap agreements. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 855 (8th Cir. 2022) (discussing disagreement and citing caselaw). The Third Circuit has held that U.C.C. § 2-207 applies to shrinkwrap agreements. *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d 91, 99 (3d Cir. 1991). In the Third Circuit, additional terms offered via shrinkwrap are *proposed additional* terms. *Id*. Proceeding to use a product after receipt of those terms, *even where notice of the terms is conspicuous*, does not necessarily signify consent. *Id. See also Howard v. Ferrelgas Partners, L.P.*, 748 F.3d 975, 982 (10th Cir. 2014) ("The … rolling contract formation theory may be about as controversial an idea as exists today in the staid world of contract law.").

That being said, each of these states have basic, overlapping contract principles that apply to this case. In the "shrinkwrap" context, each of these states require, at a minimum, 1) conspicuous notice, 2) the notice must inform the consumer they may be subject to *bilateral* terms, 3) the notice must identify what conduct constitutes acceptance, and 4) there must be an opportunity to return the product if a consumer does not wish to be bound. Each is discussed in greater detail below.

## IV.    DEFENDANT'S MOTION SHOULD BE DENIED IN FULL

### A.    Defendant Failed To Meet Its Burden To Prove A Contract Containing An Arbitration Agreement Exists With Any Plaintiff

#### 1.    Defendant Failed To Provide Conspicuous Notice

<u>First</u>, to be bound by contract, there must be conspicuous notice of the terms to each party. *Payne v. Samsung Electronics Am., Inc*., 2024 WL 726907, at *3 (Del. Sup. Ct. Feb. 21, 2024) (under Delaware law, "[e]stablishing a meeting of the minds and mutual assent turns on the existence of reasonable notice to each contracting party of the contractual terms") (internal quotations omitted); *Theodore v. Uber Techs., Inc*., 442 F. Supp. 3d 433, 438 (D. Mass. Mar. 3, 2020) (under Massachusetts law, the court must first determine whether there was reasonably conspicuous notice); *Norcia*, 845 F.3d at 1285 (under California law, "regardless of apparent manifestation of [consent], [buyer] is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."); *Kaufman v. Am. Exp. Travel Trlated Servs. Co., Inc*., 2008 WL 687224, at *6 (N.D. Ill. Mar. 7, 2008) (Under Illinois law, "the purchaser must be provided clear notice," and the notice must be "*effective*") (emphasis in original); *Lewis v. Samsung Elec. Am., Inc*., 2023 WL 7623670, at *6 (S.D.N.Y. Nov. 14, 2023) ("New York courts look to whether the term was obvious and whether it was called to the offeree's attention. This often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way.").

Whether notice is conspicuous is a "fact-intensive inquiry requiring the Court to evaluate the totality of the circumstances." *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 37 (D. Mass. 2023). *See also Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-35 (7th Cir. 2016) ("This is a fact-intensive inquiry"). "Characteristics that should generally be considered when determining whether terms are sufficiently conspicuous include: larger and contrasting font, the use of headings in capitals, or somehow setting off the term from the surrounding text by the use of symbols or other marks." *Theodore*, 442 F. Supp. 3d at 438-39 (cleaned up).

Here, the notices on the box, and in the box, cannot credibly be said to be clear and conspicuous. First, as discussed above, with respect to G30LP Kickscooters like the one purchased by Plaintiff Heymer, there is no dispute that the box failed to contain a sticker *on the outside* of the box alerting consumers about *any* terms, warranty, or arbitration, and failed to contain any warranty booklet with an arbitration agreement *inside the box*. In other words, *there was no shrinkwrap* or other notice of contract. Nor is there any evidence that Plaintiff Heymer was on notice or was presented with any arbitration agreement at the time of checkout.

With respect to G30P Kickscooters, Defendant provided no information of *when* during the class period the outside stickers were present, and no information of *what* the website on the sticker showed or *when* the website was active. It is undisputed that for Plaintiff Holmes the website was *not* live at the time of purchase. That alone is reason to deny the motion.

Further, the box notice is not conspicuous. Some boxes arrive with packing tape on the outside such that no outside sticker is visible whatsoever. For boxes without packing tape on the outside, the sticker is tiny and buried on the side of the box most unlikely to be noticed by consumers. The sticker contains the same type font, coloring, and lettering as other innocuous stickers around it, failing to draw a consumer's attention. *Cullinane v. Uber Techs., Inc.*, 893 F.3d

53, 64 (1st Cir. 2018) ("If everything on the screen is written with conspicuous features, then nothing is conspicuous."). Because the sticker is not on the "door" of the box and does not act as a "seal" that must be opened, it is very likely to not be noticed. Indeed, in the various "unboxing" videos cited by Defendant, the sticker is either not visible *at all* or is visible on the box but not noticed by the reviewer unboxing the product.

Once a consumer opens the box, the Limited Warranty guide appears to be the last document in a packet. A consumer would not see it unless they first read and set aside the relevant tools, then a Safety Notice, then a Thank You card, and then a User Manual. Even then, the Limited Warranty guide does not mention the presence of an arbitration agreement on the front page, nor contain any table of contents that would alert the consumer that an arbitration agreement might be found inside. *See, e.g., Noble*, 682 Fed. Appx. at 117 (finding insufficient notice where table of contents did not mention arbitration).

None of the Plaintiffs ever saw the sticker on the outside of the box, the Limited Warranty booklet inside, or any other reference to arbitration. See Declarations of Cicero, Heymer, Holmes, Rzewuski, and Sabu, ¶¶ 7-9.

### 2. Defendant Failed To Provide Notice Of Bilateral Terms

<u>Second</u>, even where notice is conspicuous, courts must then inquire into the *content* of the notice. The content of the notice must notify consumers that they may be subject to a *bilateral* contract that would bind them, as well as the company. *See Noble v. Samsung Elecs. Am, Inc*., 682 Fed. Appx. 113, 116 (3d Cir. 2017) (analyzing whether shrinkwrap language indicated "that it was a bilateral contract"); *Vasadi*, 2021 WL 5578736, at *10 (inquiring whether notice "sets forth a bilateral, binding agreement"). Critically, a shrinkwrap agreement alerting a consumer about the presence of a product warranty does not provide notice about a *bilateral* agreement because

warranties solely impose obligations on the *seller*, not on the *buyer*. *Norcia*, 845 F.3d at 1288 (holding that a reasonable person would not understand that there are bilateral contract obligations when the language is couched in terms of warranties, which run from the seller to the buyer"); *Noble*, 682 Fed. Appx. at 116-17 (holding that notice of a "Health and Safety and Warranty Guide" and "End User License Agreement for Software" provide "no indication" or "hint" that "it was a bilateral contract guide.").

Accordingly, courts inquire whether the noticed language necessarily implies a bilateral contract, such as by using "Terms and Conditions." *See, e.g., Noble*, 682 Fed. Appx. at 116 (notice does not signify bilateral contract in part because it did not mention that it "included any terms and conditions"); *Vasadi*, 2021 WL 5578736, at *10 ("the pamphlet's cover page identifies it as 'Terms and Conditions,' words that are unambiguously associated with contracts"); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Lit.*, 298 F. Supp. 3d at 1294 ("As [*Norcia*] emphasized, a reasonable person would not understand that there are bilateral contract obligations when the language is couched in terms of warranties, which run from the seller to the buyer. Here, the text on the boxes uses classic contractual language by giving users notice of additional *terms* and *conditions*.") (cleaned up); *Kaufman*, 2008 WL 687224, at *6 (noting that package instructing readers to "see Terms and Conditions" was a "term likely to be afforded more weight than 'information' by the average consumer").

Here, as discussed above, G30LP Kickscooters did not contain any notice of bilateral terms, as they did not come with an outside sticker or a U.S. Limited Warranty booklet inside. The only sticker on those boxes stated, in tiny text, "Please visit www.segway.com for further information." That falls far short of notice of bilateral terms or use of any "contractual" language. The Foreign Limited Warranty did not contain an arbitration agreement – and, in any case,

consumers would have no reason to read it as it explicitly did not apply to them.

G30P Kickscooters fare no better. The outside stickers only mention arbitration in the context of a Limited Warranty. Zhao Decl. ¶ 11 ("NINEBOT EKICKSCOOTER Max G30P LIMITED WARRANTY AND ARBITRATION AGREEMENT SHALL APPLY"). Even if consumers read this, they would have no reason to think that any putative arbitration agreement would apply to anything *other than warranty claims*, which are not bilateral in nature. *See, e.g., Norcia*, 845 F.3d at 1288 n. 3 (holding that "Samsung may be able to require Norcia to arbitrate claims arising out of the Standard Limited Warranty contained in the Product Safety & Warranty Information brochure," but not any other claims). There is no use of typical bilateral terms that would put a reasonable consumer on notice of mutual terms, such as "Terms and Conditions Apply," or something to that effect.

Assuming for the sake of argument that a consumer happened to go to the referenced website, or find the Limited Warranty booklet inside, they would still not be presented with any bilateral terms. The front page of the Limited Warranty booklet (purportedly identical online and in the box), exclusively talks about the Limited Warranty – there is no mention that bilateral "terms and conditions" may apply. Nor is there any mention of arbitration. The first sentence starts, "This is the manufacturer's limited warranty." There is no reason consumers would have any expectation of bilateral terms from either the title of the Limited Warranty or anything on the cover. Even if customers flipped to the next few pages to look for an index, they would not find one. There is nothing in the initial pages of the Limited Warranty instructing consumers to look to other terms and conditions, or referencing any arbitration agreement. Only if a consumer got to page six, they would see a section called "Claims and Dispute Resolution," which contains an arbitration agreement. But a consumer would have no reason to think, based on the title of the section, that it

would apply to anything other than warranty claims. Indeed, even the title of the section fails to mention arbitration. Accordingly, contract formation fails for lack of notice. All of Defendant's top-cited cases are in accord. *See, e.g., Noble*, 682 Fed. Appx. at 116; *Vasadi*, 2021 WL 5578736, at *10; *Payne*, 2024 WL 726907, at *4; *Westerkamp v. Samsung Elecs. Am., Inc.*, 2023 WL 4172967, at *1 (D.N.J. June 26, 2023) (outside box mentioned "terms and conditions (including an arbitration agreement)").

Notably, the Complaint contains no express warranty claims. While the Complaint contains an *implied* warranty claim, the claim arises "by operation of law," not from contract. *Altronics of Bethlehem, Inc. v. Repco, Inc*., 957 F.2d 1102, 1105 (3d Cir. 1992); *Doughtery v. C.R. Bard, Inc*., 2012 WL 2940727, at *8 (E.D. Pa. July 18, 2018) ("Unlike an implied warranty, which arises by operation of law, an express warranty is based on express representations or promises made by the seller. A claim for breach of express warranty thus sounds more in contract than tort.") (internal citations omitted). The Limited Warranty, an *express* warranty, is mentioned nowhere in any of the complaints, and Plaintiffs do not rely on it for any claim.  To the extent that the Court believes that the Limited Warranty impacts *any* of Plaintiffs' claims, Plaintiffs will agree to withdraw and dismiss them.

### 3. The Notice Failed To State What Conduct Constitutes Acceptance

Third, even if notice is conspicuous and provides notice of bilateral terms, it must also identify what conduct constitutes acceptance for a consumer to be bound by shrinkwrap. *See, e.g., Norcia*, 845 F.3d at 1287 (stating that shrinkwrap might have applied if the notice language stated that "opening the box would be considered agreement"); *Vasadi*, 2021 WL 5578736, at *4, 9 (holding notice sufficient where the cover page stated that the terms and conditions would be deemed accepted if consumer "opens the package, keeps or uses the phone, or indicates electronic

acceptance"); *Payne*, 2024 WL 726907, at *4 (notice sufficient where front page of booklet stated "Electronic acceptance, opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of these Terms and Conditions"); *Adams*, 680 F. Supp. 3d at 37 (not contract formed in part because pressing the button "START FREE TRIAL" was not obvious to a consumer to be an action that binds them to terms and conditions); *Kaufman*, 2008 WL 687224, at *6 ("Intent to accept would be clearer if the Gift Card or packaging had alerted the holder that use of the card constituted acceptance of the Agreement or if Kaufman had to call a 1-800 number and press one to acknowledge his acceptance").

Here, none of the relevant "notices" provide any language suggesting how a consumer would be bound: *i.e.*, whether by opening the packaging, using the Products, or keeping the Products beyond a certain time. The G30LP sticker just says "please visit www.segway.com for further information." That does not provide any hint of conduct that would deem acceptance to any terms. And, as discussed above, the G30LP KickScooters did not contain the Limited Warranty inside with an arbitration agreement. The G30P products fare no better. That sticker says that the "Limited Warranty and Arbitration Agreement shall apply." But, again, that does not provide a consumer with notice of what conduct they must perform to manifest assent. The Limited Warranty booklet is the same: there is nothing on the cover page indicating what conduct, if any, a consumer must perform to assent to the terms. Nor is there anything on the first few pages notifying consumers of what conduct they must perform to assent. There can be no manifestation of assent if consumers are not told what conduct would be deemed assent. Again, each of Defendant's cited cases is in accord. *See, e.g., Vasadi*, 2021 WL 5578736, at *1 ("If you use or retain the device, you accept Samsung's Terms and Conditions"); *Payne*, 2024 WL 726907, at *4 (outside box stating if consumers "use or retain" their phones they would "accept Samsung's Terms and Conditions

including an Arbitration Agreement"); *Westerkamp*, 2023 WL 4172967, at *1 (outside box stating, "if you open the package, use or retain the device, you accept the terms and conditions").

### 4.    Defendant Did Not Provide Opportunity To Inspect And Return

<u>Fourth</u>, courts evaluating shrinkwrap agreements typically require that the seller provide an opportunity to inspect and return the product without an additional fee as a manner of rejection because the extent of the terms typically cannot be discovered until the product is opened. *See, e.g., Kaufman*, 2008 WL 687224, at *7 ("The opportunity to return goods can be important in cases such as this where a party accepts goods, and thus forms a contract, only after an opportunity to inspect.") (cleaned up); *Ballou*, 46 F.4th at 859 n. 1 ("The crucial question … is whether [the vendor] reasonably invited acceptance by making clear … that (1) by accepting [its] products the consumer was accepting the terms and conditions contained within and (2) the  consumer could reject the terms and conditions by returning the product."); *Chamberlain*, 2017 WL 3084270, at *4 ("New York recognizes contract acceptance after a purchaser does not return a product within a specified period of time"). Here, there is no dispute that Defendant does not permit returns for Plaintiffs, who did not buy directly from Defendant. Indeed, Defendant severely restricts returns even on customers that buy directly from Segway.

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration should be denied in full. Should the Court believe that Defendant has presented credible questions of fact concerning contract formation such that it cannot issue a ruling, it should order that the Parties proceed to discovery concerning formation.

Dated:  November 25, 2025

**COOCH AND TAYLOR P.A.**

 */s/ R. Grant Dick IV*
R. Grant Dick IV (#5123)
Kevin D. Levitski (#7228)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3800
Email: gdick@coochtaylor.com
        klevitsky@coochtaylor.com

Yeremey O. Krivoshey (admitted *pro hac vice*)
**Smith Krivoshey, PC**
166 Geary Street, Suite 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Email: yeremey@skclassactions.com

Joel D. Smith (admitted *pro hac vice*)
**Smith Krivoshey, PC**
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Email: joel@skclassactions.com

Mason A. Barney*
Leslie L. Pescia (admitted *pro hac vice*)
**SIRI | GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: 212-532-1091
mbarney@sirillp.com
lpescia@sirillp.com

Kevin Laukaitis (admitted *pro hac vice*)
Daniel Tomascik (admitted *pro hac vice*)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com

* pro hac vice forthcoming

*Attorneys for Plaintiffs and the Proposed Class*