IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE SEGWAY SCOOTER RECALL LITIGATION | Civil Action No. 25-369-GBW<br><br>CONSOLIDATED |

## MEMORANDUM ORDER

On October 6, 2025, the Court entered an Order consolidating civil actions Nos. 25-369, 25-394, and 25-463. D.I. 33. Therein, the Court instructed that the parties caption the consolidated action as *In re Segway Scooter Recall Litigation* ("*Segway* Action"). D.I. 33 ¶ 3.

On November 17, 2025, Segway Inc. ("Segway") filed a Motion to Compel Arbitration and Stay All Deadlines and Proceedings ("Motion") (D.I. 39) in the *Segway* Action. That Motion is fully briefed. D.I. 40; D.I. 43; D.I. 47.

On February 5, 2026, the U.S. District Court for the Northern District of California transferred *Torres v. Segway, Inc.*, then civil action No. 25-5005 ("*Torres* Action") (a similar action to this action), to this Court. No. 26-140, D.I. 50. On February 17, 2026, the Court instructed the parties in the *Segway* and *Torres* Actions to file a single joint letter with the Court "advising whether the parties in both actions agree that the Court should consolidate both actions for purposes of discovery and/or trial." D.I. 49. On February 27, 2026, the parties timely filed a

letter stating that the parties agree to consolidation. D.I. 50. On March 2, 2026, the Court consolidated the actions.[1]

As indicated in their February 27, 2026 letter, the parties agree that the Court should proceed by ruling on the Motion prior to any other actions, including prior to the filing of a new consolidated class action complaint. D.I. 50. The Court agrees. For the reasons set forth below, the Court will order the parties to conduct additional discovery on the issue of arbitrability to facilitate the Court's resolution of the Motion.

I.  BACKGROUND

The following are allegations taken from the Consolidated Class Action Complaint ("CCAC")[2] and averments from the parties' filings.

After selling approximately 220,000 Segway Ninebot Max G30P and Max G30LP KickScooters (the "Defective Products"), Defendant "announced a nationwide recall instructing its customers to stop using them because of a dangerous defect." D.I. 34 ¶ 1. "The folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers." D.I. 34 ¶ 1. "Scores of consumers have been injured, as the defect causes the scooters to effectively collapse on themselves when consumers are going roughly twenty miles per hour, launching customers into traffic and the pavement." D.I. 34 ¶ 1. "Like some of the Plaintiffs, customers have routinely ended up in emergency rooms around the country." D.I. 34 ¶ 1.

---

[1] The Plaintiffs in the newly consolidated action are Barton Cicero, Aaron John Sabu, Christopher Holmes, Mary Rzewuski, Edward Steven Heymer, and Jimmy Torres ("Plaintiffs").

[2] The Court notes that the CCAC was prepared by the plaintiffs in the original consolidated action, predating the most recent consolidation.

2

Plaintiffs brought "this class action lawsuit to seek all available relief for consumers who purchased the Products, to raise awareness that Defendant's Products are hazardous, and to encourage companies to take greater care in avoiding the production and sale of hazardous products in the first place." D.I. 34 ¶ 7. After Plaintiffs filed their CCAC, Defendant moved to (1) compel Plaintiffs to resolve their claims individually in arbitration in light of purportedly valid arbitration agreements, (2) dismiss Plaintiffs' class action allegations, and (3) stay this action pending arbitration. D.I. 40. In response, Plaintiffs challenge the validity of the arbitration agreements and, in particular, the sufficiency of the arbitration agreement notice. D.I 43. The notice of the arbitration agreements for each of the Defective Products was as follows:

**Max G30P Scooters**: The box of the Max G30P states "ARBITRATION AGREEMENT SHALL APPLY" and "includes a URL where each purchaser may review and study the Arbitration Agreement." *See* D.I. 40 at 3; D.I. 43 at 17 (acknowledging or not contesting). The Arbitration Agreement is also available on page six of the Limited Warranty booklet that "is contained in the very top of the box." D.I. 40 at 3-4; D.I. 43 at 17.

**Max G30LP Scooters**: The Max G30LP box does "not identify the Limited Warranty or the Arbitration Agreement by name." D.I. 41 ¶ 16; D.I. 43 at 3-4. Instead, page 4 of the Max G30LP "User Manual informs the purchaser that a Limited Warranty applies and the exterior of the box tells consumers that for additional information, they may visit www.segway.com." D.I. 41 ¶ 16; D.I. 43 at 4 (acknowledging and not contesting). On that website, the Limited Warranty is available and contains an Arbitration Agreement. D.I. 41 ¶ 17; D.I. 43 (not contesting). Apparently, some, but not all, of the Max G30LP Scooters contained a Limited Warranty document, inside the box, that contained an Arbitration Agreement. D.I. 41 ¶ 18; D.I. 43 at 4 (acknowledging and not contesting). In addition, information pertaining to the Limited Warranty

3

and Arbitration Agreement was possibly available from or transmitted by retailers selling Defendant's products. D.I. 41 ¶ 22.

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") authorizes this Court to compel arbitration. 9 U.S.C. § 2. A motion to compel arbitration under the FAA can be considered under either a Rule 12(b)(6) standard or a Rule 56 standard, depending on the circumstances. "If the motion can be decided based on the face of a complaint, and documents relied upon in the complaint, a motion-to-dismiss standard should be used; otherwise, the summary judgment standard should be applied." *Adler v. Gruma Corp.*, 135 F.4th 55, 63 (3d Cir. 2025) (cleaned up).

"Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013) (cleaned up); *see also Dorset v. United Healthcare Servs.*, Inc., No. 23-21749 (JXN)(JRA), 2024 U.S. Dist. LEXIS 118906, at *5 (D.N.J. July 8, 2024) (explaining that "even where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint").

Here, having considered the record and the applicable law, the Court concludes that the appropriate standard for resolving the issue of arbitrability in this action is the standard set forth by Federal Rule of Civil Procedure 56 for summary judgment, including because the Court was unable to resolve the issue of arbitrability on the basis of the CCAC and the documents relied upon by Plaintiffs therein. *See Adler*, 135 F.4th 55, 63 (holding with respect to "a motion to compel arbitration" that if "the motion can be decided based on the face of a complaint, and documents

relied upon in the complaint, a motion-to-dismiss standard should be used; otherwise, the summary judgment standard should be applied" (cleaned up)).

### III. DISCUSSION

Here, the Court is yet unable to resolve the issue of arbitrability under the summary judgment standard on the basis of the current evidence, declarations, and submissions. To resolve questions of arbitrability, courts "must consider two gateway questions, one of which is whether the parties have a valid arbitration agreement." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (cleaned up). "Because arbitration is treated as an affirmative defense, the burden falls on the party seeking to compel arbitration to establish these requirements." *Vasadi v. Samsung Elecs. Am., Inc.*, Civil Action No. 21-10238-WJM-AME, 2021 U.S. Dist. LEXIS 228899, at *15 (D.N.J. Nov. 29, 2021).

In determining whether a valid arbitration agreement exists, courts "apply state-law principles of contract formation." *Bacon*, 959 F.3d at 600 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, while Defendant does not discuss the choice-of-law inquiry in its opening brief, Defendant generally relies on Delaware law. D.I. 40 at 12 ("Under Delaware law, . . . ."). Plaintiffs criticize Defendant for not discussing the choice-of-law inquiry, but then assert that "what state law controls here does not matter" and that each of the state laws potentially at issue "have basic, overlapping contract principles that apply to this case." D.I. 43 at 11-13. In its reply brief, Defendant contends that the law of the forum (Delaware law here) applies absent a conflict of law. D.I. 47 at 1. Here, the Court applies "Delaware law" since the parties do not raise any "conflict" of law. *See Marquinez v. Dole Food Co.*, Civil Action No. 12-695-RGA, 2020 U.S. Dist. LEXIS 171294, at *10 (D. Del. Sep. 18, 2020).

"Under Delaware law, contract formation requires mutual assent, meaning a complete meeting of the minds of the parties." *Payne v. Samsung Elecs. Am., Inc.*, No. N23C-03-193 FWW,

5

2024 Del. Super. LEXIS 114, at *7 (Super. Ct. Feb. 21, 2024) (citation omitted). "Establishing a meeting of the minds and mutual assent turns on the existence of reasonable notice to each contracting party of the contractual terms." *Id.* (cleaned up). A reasonable notice may arise, even if the offeree "does not have actual notice," as long as the offeree has "inquiry notice" and "assents by conduct that a reasonable person would understand to constitute assent." *Id.* at *13 (citation omitted).

With respect to arbitration provisions, offerees "are on inquiry notice where the notice of the arbitration provision was reasonably conspicuous and [the] manifestation of assent [was] unambiguous as a matter of law." *Id.* at *13 (citation omitted); *see also Vasadi*, 2021 U.S. Dist. LEXIS 228899, at *24 (explaining, under New Jersey law, that "arbitration agreements" can be enforceable when they set "forth contractual terms on or inside the packaging, which consumers are deemed to accept by opening or using the products"). Whether notice is conspicuous can be a "fact-intensive inquiry requiring the Court to evaluate the totality of the circumstances." *See Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 37 (D. Mass. 2023) (cleaned up).

As stated above, the Court is unable to resolve the issue of arbitrability in this action under the summary judgment standard on the basis of the current evidence, declarations, and submissions. *See, e.g., Kozur v. F/V Atl. Bounty, LLC*, Civil Action No. 18-08750, 2019 U.S. Dist. LEXIS 178901, at *12-14 (D.N.J. Oct. 16, 2019) (finding "issues of fact as to whether the parties entered into a valid arbitration agreement"). For example, the Court is unable to determine whether the notice of the arbitration agreement on the sticker located on the outside of the boxes containing the Max G30P Scooters is conspicuous, including because the Court is unable, on the basis of the current submissions, to determine: (1) the exact location of the sticker on the box, (2) the exact size of the sticker, (3) whether all Max G30P Scooters had the sticker at all relevant times

during the class period, (4) whether and how often any visual obstructions impaired viewing of the sticker, and (5) to the extent relevant, whether Defendant or a third party installed the visual obstructions impairing the viewing of the sticker. *Compare* D.I. 40 at 3 (contending that "the Arbitration Agreement was prominently referenced on the Max G30P box"), *with* D.I. 43 at 14 (contending that "Defendant provided no information of when during the class period the outside stickers were present, and no information of what the website on the sticker showed or when the website was active. . . . Further, the box notice is not conspicuous. Some boxes arrive with packing tape on the outside such that no outside sticker is visible whatsoever. For boxes without packing tape on the outside, the sticker is tiny and buried on the side of the box most unlikely to be noticed by consumers. The sticker contains the same type font, coloring, and lettering as other innocuous stickers around it, failing to draw a consumer's attention.").

Therefore, the Court will order the parties to engage in limited discovery, submit a joint statement of disputed and undisputed facts, with additional evidence and / or declarations, and submit separate supplemental three-page letter briefs addressing the application of law to the disputed and undisputed facts, after which the Court will, if necessary, schedule an evidentiary hearing.

\* \* \*

AND NOW, this 10th day of March 2026, **IT IS HEREBY ORDERED** that:

1. The parties shall conduct limited discovery on the issue of arbitrability for a period of sixty (60) days; and

2. By no later than seventy-five (75) days from the entry of this Memorandum Order, the parties shall submit a joint statement of undisputed and disputed facts, with exhibits for each declaration or item of evidence, that clearly delineates between undisputed or disputed facts pertaining to the Max G30P Scooter and the Max G30LP Scooter; and

3. By no later than seventy-five (75) days from the entry of this Memorandum Order, the Parties shall separately file a letter brief (one for Plaintiffs and one for Defendant), no more than three (3) pages in length, applying the applicable law, with citations to relevant cases, to the undisputed and disputed facts.

                                          GREGORY B. WILLIAMS
                              UNITED STATES DISTRICT JUDGE