**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE SEGWAY SCOOTER RECALL LITIGATION | Civil Action No. 25-369-GBW<br><br>CONSOLIDATED |

## MEMORANDUM ORDER

On October 6, 2025, the Court entered an Order consolidating Civil Action Nos. 25-369, 25-394, and 25-463. D.I. 33. In its Order, the Court instructed that the parties caption the consolidated action as *In re Segway Scooter Recall Litigation* ("*Segway* Action"). D.I. 33 ¶ 3.

On November 17, 2025, Segway Inc. ("Defendant" or "Segway") filed a Motion to Compel Arbitration and Stay All Deadlines and Proceedings ("Defendant's Motion") (D.I. 39) in the *Segway* Action, which is fully briefed. D.I. 40; D.I. 43; D.I. 47. On March 10, 2026, the Court issued an Order directing the parties to conduct limited discovery on the issue of arbitrability for a period of sixty (60) days. D.I. 52. The Court also directed the parties to, following the discovery period, submit a joint statement of undisputed and disputed facts, as well as separate letter briefs applying the applicable law to the undisputed and disputed facts. *Id.* The parties submitted their Joint Statement of Undisputed and Disputed Facts on July 1, 2026 (D.I. 87), and submitted their respective letter briefs on July 15, 2026 (D.I. 92; D.I. 93).

On February 5, 2026, the U.S. District Court for the Northern District of California transferred *Torres v. Segway, Inc.*, then Civil Action No. 25-5005 ("*Torres* Action") to this Court. C.A. No. 26-140, D.I. 50. On February 17, 2026, the Court instructed the parties in the *Segway* and *Torres* Actions to file a single joint letter with the Court "advising whether the parties in both

actions agree that the Court should consolidate both actions for purposes of discovery and/or trial." D.I. 49.  On February 27, 2026, the parties filed a timely letter stating that the parties agree to consolidation. D.I. 50.  On March 2, 2026, the Court consolidated the *Segway* and *Torres* actions.

On April 1, 2026, the U.S. District Court for the Western District of Washington transferred *Hanson v. Segway, Inc.*, then Civil Action No. 25-1436 ("*Hanson* Action") to this Court.  C.A. No. 25-1436, D.I. 44.  On April 8, 2026, the Court instructed the parties in the *Segway* and *Hanson* Actions to file a single joint letter with the Court "advising whether the parties in both actions agree that the Court should consolidate both actions for purposes of discovery and/or trial."  D.I. 56. On April 16, 2026, the parties filed a timely letter stating that the parties agree to consolidation. D.I. 57.  On April 17, 2026, the Court consolidated the *Segway* and *Hanson* actions.[1]  D.I. 58.

As indicated in their February 27, 2026 letter, the parties agree that the Court should proceed in this action by ruling on the pending Motion to Compel Arbitration and Stay All Deadlines and Proceedings (D.I. 39) prior to any other actions, including prior to the filing of a new consolidated class action complaint.  D.I. 50.  The Court agrees.  For the reasons set forth below, the Court grants-in-part and denies-in-part Defendant's Motion (D.I. 39).

## I.  BACKGROUND

The following are allegations taken from the Consolidated Class Action Complaint ("CCAC")[2] and averments from the parties' filings.

---

[1] The Plaintiffs in the consolidated action are Barton Cicero, Aaron John Sabu, Christopher Holmes, Mary Rzewuski, Edward Steven Heymer, Jimmy Torres, and Paul Hanson (together, "Plaintiffs").

[2] The Court notes that the CCAC was prepared by the plaintiffs in the original consolidated action, predating the two most recent consolidations.

After selling approximately 220,000 Segway Ninebot Max G30P and Max G30LP KickScooters (the "Defective Products"), Defendant "announced a nationwide recall instructing its customers to stop using them because of a dangerous defect." D.I. 34 ¶ 1. "The folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers." *Id.* "Scores of consumers have been injured, as the defect causes the scooters to effectively collapse on themselves when consumers are going roughly twenty miles per hour, launching customers into traffic and the pavement." *Id.* "Like some of the Plaintiffs, customers have routinely ended up in emergency rooms around the country." *Id.*

Plaintiffs brought "this class action lawsuit to seek all available relief for consumers who purchased the Products, to raise awareness that Defendant's Products are hazardous, and to encourage companies to take greater care in avoiding the production and sale of hazardous products in the first place." *Id.* ¶ 7. After Plaintiffs filed their CCAC, Defendant moved to (1) compel Plaintiffs to resolve their claims individually in arbitration in light of purportedly valid arbitration agreements, (2) dismiss Plaintiffs' class action allegations, and (3) stay this action pending arbitration. D.I. 40. In response, Plaintiffs challenge the validity of the arbitration agreements and, in particular, the sufficiency of the arbitration agreement notice. D.I 43. The notice of the arbitration agreements for each of the Defective Products was as follows:

**<u>Max G30P Scooters</u>**: The exterior box containing G30P KickScooters stands "possibly more than three feet tall and about four feet wide." D.I. 87 at 18 (undisputed). The box of the Max G30P contains a sticker stating: "ARBITRATION AGREEMENT SHALL APPLY AVAILABLE AT https://www.segway.com/max-warranty/." *See id.* at 4 (undisputed). The sticker consists of a white label approximately 3 ½ to 4 inches wide, with black lettering in a Sans Sarif font." *Id.* at 5 (undisputed). "Stickers on G30P KickScooters boxes that reference arbitration

3

appear on the side of the box, and never on the top, bottom, or front of the box." *Id.* at 18 (undisputed). These stickers "do[] not cover any seam that would be required to open the box." *Id.* at 18-19 (undisputed). The Arbitration Agreement is also delivered in "a limited warranty insert to all purchasers," which is "contained in the very top of G30P KickScooter boxes distributed by Segway and sits on top of or adjacent to the charger for the G30P KickScooter." *Id.* at 5-6 (undisputed). A G30P KickScooter "cannot ordinarily be removed from its box without also removing . . . the packet containing the Limited Warranty." *Id.* at 7 (undisputed).

**Max G30LP Scooters**: The Max G30LP box "has never identified a limited warranty or an arbitration agreement by name." D.I. 87 at 20 (undisputed). Instead, page 4 of the Max G30LP User Manual "contains a box on the top right of the page with the words 'LIMITED WARRANTY' inside and a sticker on side of the exterior of the box states 'Please visit www.segway.com for further information,' amongst other content." *Id.* at 11 (undisputed). "A person visiting www.segway.com could, by clicking on an icon called 'support' navigate to additional web pages providing access to a Limited Warranty applicable to all Segway KickScooters." *Id.* at 12 (undisputed). That Limited Warranty "contain[s] an Arbitration Agreement." *Id.* at 12 (undisputed in relevant part). "G30LP KickScooters produced in 2020 . . . also included product inserts that included a Limited Warranty, including an Arbitration Agreement." *Id.* at 10 (undisputed). The parties dispute whether G30LP KickScooters produced in 2021 contain the same product inserts. *Id.* However, it is undisputed that G30LP KickScooters produced between 2022 to 2025 are not equipped with a limited warranty containing an arbitration agreement. *Id.* at 11 (undisputed). Instead, these 2022-2025 G30LP KickScooters were "packaged with a limited warranty that expressly stated the warranty applied to purchases in Europe, the Middle East, and Africa and did not contain an arbitration provision." *Id.* (undisputed).

4

The extent of notice each Plaintiff in this action personally received when purchasing a Segway scooter is as follows:

**Max G30P Scooters**:   Plaintiff Christopher Holmes ("Holmes") purchased a G30P KickScooter in its original packaging on June 30, 2021, from www.academy.com. D.I. 87 at 2 (undisputed).  Holmes did not recall seeing any stickers on the original packaging. *Id.* at 28 (undisputed in relevant part).  Upon opening the packaging, Holmes "did not see any warranty booklet inside the original packaging pertaining to the G30P that he had knowledge of its containing any arbitration clause." *Id.* at 28 (undisputed).

Plaintiff Aaron John Sabu ("Sabu") purchased a used G30P KickScooter in its original packaging on June 29, 2024, from www.amazon.com. *Id.* at 2, 8 (undisputed).  Sabu does not remember seeing a warranty booklet inside the box. *Id.* at 27 (undisputed in relevant part).  Sabu also did not see a sticker referencing a limited warranty or arbitration on the packaging. *Id.* (undisputed in relevant part).  Sabu did not opt out of the Arbitration Agreement. *Id.* at 9 (undisputed).

**Max G30LP Scooters:**   Plaintiff Jimmy Torres ("Torres") purchased a G30LP KickScooter on April 27, 2024, from www.amazon.com. D.I. 87 at 2 (undisputed).  Torres has no recollection of reading a Limited Warranty inside the packaging of the G30LP KickScooter, nor seeing anything concerning a warranty in Segway's mobile app. *Id.* at 26 (undisputed).  Torres did not opt out of the Arbitration Agreement. *Id.* at 16 (undisputed).

Plaintiff Edward Steven Heymer ("Heymer") purchased a G30LP KickScooter on August 7, 2022, from www.bestbuy.com. *Id.* at 2 (undisputed).  "Heymer received the Ninebot KickScooter Limited Warranty for Europe, Middle East, and Africa in the box containing his G30LP KickScooter, which does not contain an arbitration provision." *Id.* at 29 (undisputed).

"Heymer did not see any sticker or other indication on the original packaging of the Segway G30LP KickScooter, prior to opening it, that contained a reference to any arbitration clause." *Id.* at 28 (undisputed). Heymer also did not see a warranty booklet inside the original packaging containing any arbitration clause. *Id.* at 29 (undisputed).

Plaintiff Paul Hanson ("Hanson") purchased a G30LP KickScooter on July 3, 2021, from www.amazon.com. *Id.* at 2 (undisputed). Hanson does not recall seeing any documentation inside the G30LP scooter's packaging. *Id.* at 30 (undisputed).

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") authorizes this Court to compel arbitration. 9 U.S.C. § 2. A motion to compel arbitration under the FAA can be considered under either a Rule 12(b)(6) standard or a Rule 56 standard, depending on the circumstances. "If the motion can be decided based on the face of a complaint, and documents relied upon in the complaint, a motion-to-dismiss standard should be used; otherwise, the summary judgment standard should be applied." *Adler v. Gruma Corp.*, 135 F.4th 55, 63 (3d Cir. 2025) (cleaned up). In the Court's Order dated March 10, 2026, the Court concluded that "the appropriate standard for resolving the issue of arbitrability in this action is the standard set forth by Federal Rule of Civil Procedure 56 for summary judgment." D.I. 52 at 4. Under the summary judgment standard, the Court asks "whether Defendant, as the moving party, has 'show[n] that there is no genuine dispute as to any material fact and [Defendant] is entitled to' an order compelling arbitration 'as a matter of law.'" *Adler*, 135 F.4th at 63 (alterations in original) (quoting *Giudotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013)).

## III. DISCUSSION

To resolve questions of arbitrability, courts "must consider two gateway questions, one of which is whether the parties have a valid arbitration agreement." *Bacon v. Avis Budget Grp., Inc.*,

959 F.3d 590, 599 (3d Cir. 2020) (cleaned up). "Because arbitration is treated as an affirmative defense, the burden falls on the party seeking to compel arbitration to establish these requirements." *Vasadi v. Samsung Elecs. Am., Inc.*, Civil Action No. 21-10238-WJM-AME, 2021 WL 5578736, at *6 (D.N.J. Nov. 29, 2021).

"Under Delaware law[3], contract formation requires mutual assent, meaning a complete meeting of the minds of the parties." *Payne v. Samsung Elecs. Am., Inc.*, No. N23C-03-193 FWW, 2024 WL 726907, at *3 (Del. Super. Ct. Feb. 21, 2024) (citation omitted). "Establishing a meeting of the minds and mutual assent turns on the existence of reasonable notice to each contracting party of the contractual terms." *Id.* (cleaned up). A reasonable notice may arise, even if the offeree "does not have actual notice," as long as the offeree has "inquiry notice" and "assents . . . by conduct that a reasonable person would understand to constitute assent." *Id.* at *13 (citation omitted). Offerees "are on inquiry notice where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent [was] unambiguous as a matter of law." *Id.* at *13 (citation omitted). Whether notice is conspicuous can be a "fact-intensive inquiry requiring the Court to evaluate the totality of the circumstances." *See Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 37 (D. Mass. 2023) (cleaned up). "Once there is reasonable notice, a party is bound by those terms, even if he failed to read them." *Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 116 (3d Cir. 2017).

---

[3] In determining whether a valid arbitration agreement exists, courts "apply state-law principles of contract formation." *Bacon*, 959 F.3d at 600 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In the Court's March 10, 2026 Memorandum Order, the Court applied Delaware law to the question of arbitration. *See generally* D.I. 52. Here, the Court again applies Delaware law since the parties do not raise any conflict of law or otherwise object to the application of Delaware law. *See Marquinez v. Dole Food Co.*, C.A. No. 12-695-RGA, 2020 WL 10895709, at *3 (D. Del. Sep. 18, 2020).

Courts have found notice sufficient where the consumer "received physical copies of the terms and conditions upon opening the products." *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017) (citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), a case followed under Delaware law[4]). This includes shrinkwrap agreements, which are agreements on or inside the packaging of the product that contain the arbitration terms. *See Payne*, 2024 WL 726907, at *3 (applying Delaware law); *Austin v. Segway, Inc.*, CIVIL NO. 25-1743, 2026 WL 839116, at *3 (E.D. Pa. Mar. 26, 2026) ("[S]hrinkwrap agreements are enforceable when, at minimum, there is reasonable notice of the contractual terms on the exterior packaging and when purchasers have the opportunity to either opt out of an arbitration clause or otherwise return the product to avoid assenting to the agreement." (applying Delaware law)); *see also James*, 852 F.3d at 267 ("In [shrinkwrap-license] cases, the license terms are typically provided inside the packaging, and consumers are deemed to accept those terms by opening or using the products." (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 121 & n.10 (2d Cir. 2012))). This also includes arbitration agreements that are provided in a brochure or booklet inside the box. *See Payne*, 2024 WL 726907, at *8 (finding notice sufficient where the product contained a booklet mentioning an arbitration agreement); *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) (finding notice sufficient where the terms were provided inside a software box). Upon receiving such notice, the "subsequent use of the products manifest[s] assent to the enclosed terms." *James*, 852 F.3d at 267.

---

[4] The Court further discusses the line of cases that is followed under Delaware law regarding notice *infra* Section III.A, which includes *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), and *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996).

### A.   Plaintiffs Holmes and Sabu Entered Into an Enforceable Arbitration Agreement with Segway Regarding Max G30P Scooters

The parties do not dispute that the Max G30P KickScooter's packaging contains (1) a sticker on the exterior of the box stating: "ARBITRATION AGREEMENT SHALL APPLY AVAILABLE AT https://www.segway.com/max-warranty/" (D.I. 87 at 4), as well as (2) "a limited warranty insert" that is "contained in the very top of G30P KickScooter boxes" (*id.* at 5-6). The Court finds these forms of notice reasonable both individually and in conjunction. As the Court explained *supra*, an explicit reference to arbitration on the exterior packaging (a shrinkwrap notice) or inside a booklet in the box is sufficient notice. *Payne*, 2024 WL 726907, at *3; *Austin*, 2026 WL 839116, at *3. Holmes's packaging contained both the exterior sticker and the limited warranty insert. Thus, Holmes was put on inquiry notice of arbitration twice. *See* D.I. 87 at 7; *see also Payne*, 2024 WL 726907, at *7 (finding inquiry notice of an arbitration agreement via a shrinkwrap notice was on the exterior of a box and a booklet inside the box). According to Plaintiffs, Sabu's used box did not have a sticker on the exterior packaging. *See* D.I. 93 at 2. Nevertheless, Sabu still received notice of the arbitration agreement via the limited warranty insert in the packaging. That inside-the-box notice is sufficient, even in the absence of the exterior notice.

After receiving notice, Holmes and Sabu assented to the arbitration agreement. The limited warranty explicitly provided instructions for how to opt out of arbitration within thirty days. *See* D.I. 40 at 6 (citing D.I. 40-1, Ex. 1, Limited Warranty at 6-7). Sabu did not opt out. D.I. 87 at 9 (undisputed). The parties did not provide evidence regarding whether Holmes opted out. However, "Holmes did not pay attention to any stickers on the G30P KickScooter's box," "did not see any warranty booklet inside the original packaging," and "left the booklet 'inside the plastic.'" D.I. 87 at 7, 28 (undisputed). From this, the Court can infer that Holmes never reviewed the opt-

out instructions, and thus, never opted out of arbitration. In addition to being able to opt out of arbitration, Holmes and Sabu could have returned the product. *Austin*, 2026 WL 839116, at *3. Since neither opted out nor returned the product, Holmes and Sabu entered into an enforceable arbitration agreement with Defendant.

The Court finds Plaintiffs' arguments to the contrary unconvincing. For example, Plaintiffs claim that Holmes and Sabu did not receive notice because Holmes neither saw the sticker on the exterior nor reviewed the limited warranty booklet inside, and Sabu's used box did not have a sticker. D.I. 93 at 2. If true, Plaintiffs' argument nevertheless fails because a purchaser need not have *actual* notice of the agreement in order to be bound by its terms. Rather, under Delaware law, "an offeree may be bound by certain terms of a contract, even if he does not have actual notice of those terms if he is on inquiry notice of them and assents to them by conduct that a reasonable person would understand to constitute assent." *Payne*, 2024 WL 726907, at *5; *see also Noble*, 682 F. App'x at 116 ("Once there is reasonable notice, a party is bound by those terms, even if he failed to read them."). Since the Court has found that Defendant provided reasonable *inquiry* notice to Holmes and Sabu, Holmes and Sabu were bound by the arbitration terms, regardless of whether they actually saw the terms on the box or inside their respective box.

Indeed, Plaintiffs' citations to analogous cases involving the same scooters are distinguishable. *See* D.I. 93 (citing *Marouane Lamharzi Alaoui v. Segway Powersports et al.*, No. 5:25-cv-01659-SSS-SPx, 2026 WL 1658502 (C.D. Cal. June 5, 2026), and *Bradsher v. Segway, Inc.*, No. 25-cv-02782-JMY, 2025 WL 2024491 (E.D. Pa. July 17 2025)). In both *Alaoui* and *Bradsher*, the court denied the defendant's motion to compel arbitration. *Alaoui* and *Bradsher* are inapplicable to Holmes and Sabu's claims in the present action for two reasons. *First,* those courts lacked sufficient evidence regarding the type of notice the plaintiffs received. In *Alaoui*, the court

10

could not determine where on the box the arbitration sticker was located, or whether the website where the plaintiff purchased the scooter provided warranty information upon checkout. *Alaoui*, 2026 WL 1658502, at \*3. In *Bradsher*, the types of notice provided differed based on the year the scooter was purchased. *Bradsher*, 2025 WL 2024491, at \*5. In *Bradsher*, the court did not know the year or method that the KickScooter was purchased, and could not determine whether the plaintiff even received a limited warranty booklet containing an arbitration agreement. *Bradsher*, 2025 WL 2024491, at \*5-7. In contrast, for Holmes and Sabu's claims in the present action, the Court has sufficient detail regarding (1) the location of the sticker, (2) the size of the sticker, (3) the location of the limited warranty pamphlet, (4) whether Plaintiffs' specific purchases included a sticker, (5) the year and method that each Plaintiff purchased their KickScooter, and (6) whether the limited warranty pamphlet for Plaintiffs' purchases applied to the United States and contained an arbitration agreement. Thus, the facts in *Alaoui* and *Bradsher* distinguish those cases from the analysis of Holmes and Sabu's claims in this action.

*Second*, *Alaoui* applies California law, which differs materially from Delaware law with respect to in-the-box contracts. California courts (including the *Alaoui* court) follow *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279 (9th Cir. 2017). In *Norcia*, the court found that an offeree is not bound by an arbitration agreement when its terms were "not called to the attention of the recipient." *Id.* at 1289 (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 567 (9th Cir. 2014)). Under this reasoning, when an arbitration agreement is explicitly but inconspicuously referenced in a warranty brochure, "a reasonable person . . . would not be on notice" of arbitration. *Id.* at 1282, 1290. In contrast, Delaware courts follow the reasoning in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), a case which the *Norcia* court cited with disapproval. *See Norcia*, 845 F.3d at 1290 ("[Defendant] urges us to conclude, as the Seventh

11

Circuit did in *Hill*, that the practicalities of consumer transactions require the enforcement of in-the-box contracts and that consumers expect that products will come with additional terms. We decline this request."); *see also Westendorf v. Gateway 2000, Inc.*, No. 16913, 2000 WL 307369, at *3 (Del. Ch. Mar. 16, 2000), *aff'd*, 763 A.2d 92 (Del. 2000) (applying Delaware law and citing *Hill* with approval); *Rinaldi v. Iomega Corp.*, No. 98C-09-064-RRC, 1999 WL 1442014 (Del. Super. Ct. Sep. 3, 1999) (same). In *Hill*, the court found that a statement of terms including an arbitration provision enclosed in the product's box was sufficient notice, even though the arbitration provision did not stand out and the plaintiff did not read the terms "closely enough to discover the agreement to arbitrate." *Hill*, 105 F.3d at 1148, 1150. The *Hill* court noted that "[p]ractical considerations support allowing vendors to enclose the full legal terms with their products." *Id.* at 1149. The reasoning adopted in *Hill*, and rejected in *Norcia*, is consistent with this Court's analysis of Delaware law regarding in-the-box contracts *supra*. In short, under Delaware law, notice is sufficient where a plaintiff is on inquiry notice and has an opportunity to read the terms to arbitrate, even if the terms are not prominently placed or the plaintiff chooses not to read the terms. Thus, Plaintiffs' reliance on California law is unpersuasive for purposes of analyzing Delaware law.

For all these reasons, the Court grants Defendant's Motion with respect to Plaintiffs Holmes and Sabu.

### B.    Plaintiffs Torres, Heymer, and Hanson Did Not Enter Into an Enforceable Arbitration Agreement with Segway Regarding Max G30LP Scooters

Unlike the G30P scooter, the G30LP scooter's box contains no exterior sticker referencing an arbitration agreement. Instead, it contains a sticker which states: "Please visit www.segway.com for further information." D.I. 87 at 21 (undisputed). In addition, the G30LP scooter packaging contains various terms and conditions inside, the substance of which differs

based on the year the scooter was sold. G30LP KickScooters purchased in 2020 contain a product insert including a limited warranty with an arbitration agreement inside. D.I. 87 at 10 (undisputed). As for scooters purchased in 2021, the parties dispute whether those scooters contained a limited warranty with an arbitration agreement. *See id.* Indeed, the deposition of Defendant's 30(b)(6) witness, Wei Zhao ("Zhao"), confirms that Defendant did not know for certain whether all G30LP scooters purchased in 2021 included a limited warranty inside. D.I. 87, Ex. 11, at 60:23-61:16. Also, "G30LP KickScooters sold between 2022-2025 were packaged with a limited warranty that expressly stated the warranty applied to purchases in Europe, the Middle East, and Africa and did not contain an arbitration provision." D.I. 87 at 11 (undisputed). Further, all G30LP scooters from November 2021 through the present contain a user manual with the words "LIMITED WARRANTY" inside. D.I. 87 at 11-12 (undisputed). *That* limited warranty, which can be located on the warranty information section of Defendant's website, includes an arbitration agreement. *Id.* at 12 (undisputed). Notably, the user manual does not provide a link or URL to said warranty. *Id.* at 20 (undisputed).

In this action, Defendant argues that G30LP scooter purchasers received the arbitration agreement in three main ways: (1) by seeing the limited warranty references in the user manual, and navigating to the URL for "further information" on the product packaging's exterior to locate said warranty (D.I. 92 at 2), (2) through "retailers like Amazon" which "disclosed a copy of the Limited Warranty on their websites" (D.I. 40 at 6), and (3) by navigating the Segway-Ninebot mobile app to the "'Help & Feedback' section containing 'Warranty Policy' access" as of 2024 (D.I. 92 at 3). The Court analyzes each of Defendant's arguments as applied to Hanson, Torres, and Heymer below.

### 1.    Plaintiff Hanson

The Court finds that genuine issues of material fact exist regarding whether Hanson received notice of the arbitration agreement.  Hanson purchased his scooter in 2021, a year in which the parties dispute whether certain G30LP KickScooters contained a limited warranty insert.  Given that Defendant has proffered no evidence that Hanson's scooter specifically contained such a warranty, the Court will construe the facts and reasonable inferences in the light most favorable to Plaintiffs and assume that Hanson's purchase did not include a limited warranty insert.  Under these circumstances, Hanson, exercising reasonable prudence, would not have discovered the arbitration agreement. *See Altenbaugh v. Benchmark Builders Inc.*, No. 120, 2022 WL 176292, at *2 (Del. 2022) ("A party is deemed to have inquiry notice 'upon the discovery of facts constituting a basis for the cause of action, or [where the party] knows facts sufficient to put a person of ordinary intelligence and prudence on inquiry, which, if pursued, would lead to the discovery of such facts.'" (alteration in original) (quotation omitted)).  It is not enough that Hanson could have accessed the arbitration agreement by navigating a path of links on www.segway.com, as provided on the exterior box sticker.  The sticker's vague statement referring to "further information" does not put purchasers on notice that the information includes a limited warranty containing an arbitration agreement.  Nor is it sufficient that Hanson could have noticed the references to a limited warranty in the user manual and looked it up on Defendant's website.  Notice of the arbitration agreement must be *conspicuous*. *See Payne*, 2024 WL 726907, at *5.  A sticker and a user manual that fail to mention arbitration or an arbitration agreement are not conspicuous.

Defendant's argument that Hanson may have received electronic notice on www.amazon.com also fails.  Defendant asserts that, "for certain purchases of the G30LP, consumers may receive the Arbitration Agreement online." D.I. 40 at 6.  However, the parties

14

dispute whether the arbitration agreement was available on www.amazon.com in 2021, the website and year in which Hanson purchased his G30LP scooter. *See, e.g.*, D.I. 87, Ex. 11, at 76:11-77:3 (stating that Zhao lacks information on whether www.amazon.com mentioned the limited warranty between 2019 and 2025); D.I. 87 at 9 (disputing whether Amazon's websites "provide access to the Limited Warranty and Arbitration Agreement prior to checkout when purchasing a G30LP KickScooter"). Given that Defendant has not presented conclusive evidence to support its position, the Court will construe the facts and reasonable inferences in the light most favorable to Plaintiffs and assume that the arbitration agreement was not available on www.amazon.com when Hanson purchased his G30LP scooter. Given that inference, a reasonable juror could conclude that Hanson did not receive notice of the arbitration agreement on www.amazon.com.

With respect to Hanson, *Bradsher* is informative. Similar to the court in *Bradsher*, this Court lacks conclusive information as to whether Hanson's purchase included the relevant limited warranty, or whether said warranty was available on the website where the scooter was purchased. *See Bradsher*, 2025 WL 2024491, at *5 (finding that genuine issues of material fact exist where plaintiff did not plead the year or method that his scooter was purchased), *7 (finding that genuine issues of material fact exist where it was unclear whether Amazon provided electronic notice before purchase). In the absence of such evidence, the *Bradsher* court found that "a genuine issue of material fact exists as to whether Plaintiff agreed to arbitrate. A reasonable jury could conclude that Plaintiff did not receive adequate notice of the applicable warranty through the KickScooter's printed packaging, nor through the online retailer pre-sale." *Id.* at *7. The same is true with respect to Hanson in this action.

Further, although Hanson "utilized the Segway Ninebot mobile application with his G30LP KickScooter" (D.I. 87 at 15), Hanson's 2021 purchase predates the availability of the limited

15

warranty on the Segway-Ninebot mobile app.  Thus, Hanson could not have navigated the mobile app to find the arbitration agreement at the time of his purchase.

For all these reasons, the Court denies Defendant's Motion with respect to Plaintiff Hanson.

### 2.    Plaintiff Torres

Likewise, the Court also finds that genuine issues of material fact exist regarding whether Torres, who purchased his G30LP scooter in 2024, received notice of the arbitration agreement. Not only did Torres's box *not* include a limited warranty booklet including an arbitration agreement applying to the United States, but he instead received a limited warranty that expressly applied to "purchases in Europe, the Middle East, and Africa and did not contain an arbitration provision." D.I. 87 at 10-11.  In the absence of a limited warranty booklet, Defendant relies on the user manual and exterior sticker provided with Torres's purchase. D.I. 92 at 3.  For the same reasons as the Court articulated *supra* with respect to Hanson, the Court finds that neither the user manual in the G30LP scooter's box nor the exterior sticker gave Torres sufficient notice of an arbitration agreement.

Moreover, the Court finds that genuine issues of material fact exist as to whether Torres was provided electronic notice on Amazon's website, where he purchased his G30LP scooter. Defendant has not put forth sufficient evidence that www.amazon.com had the limited warranty available during Torres's 2024 purchase.  D.I. 87 at 24 (not disputing that "Segway has no knowledge of whether the limited warranty or arbitration were mentioned on amazon.com with regards to G30LP and G30P KickScooters between 2019 until October 2025").  Thus, the Court will construe the facts and reasonable inferences in the light most favorable to Torres and assume that the limited warranty containing an arbitration agreement was not available on www.amazon.com when Torres purchased his G30LP scooter in 2024.  Given that inference, a

16

reasonable juror could conclude that Torres did not receive notice of the arbitration agreement on www.amazon.com.

Lastly, Torres "activated the G30LP KickScooter using the Segway-Ninebot mobile app." D.I. 87 at 16 (undisputed). By the time Torres utilized the mobile app, the limited warranty containing an arbitration agreement was available in the "Help & Feedback" section of the app. *Id.* (undisputed in relevant part). However, Defendant has not put forth any evidence that Torres would have had to view the arbitration agreement within the app prior to activating his KickScooter. Inconspicuously placing an arbitration agreement within a mobile app, without more specific notice or directions directing customers to the arbitration agreement, does not give customers a reasonable opportunity to review said terms upon purchasing the product. To the contrary, this level of notice is even more tenuous than asking a customer to navigate to the limited warranty based on a URL directing the customer to "further information."

For all these reasons, the Court denies Defendant's Motion with respect to Plaintiff Torres.

### 3.    Plaintiff Heymer

The Court also finds that genuine issues of material fact exist regarding whether Heymer, who purchased his G30LP scooter in 2022, received notice of the arbitration agreement. Like Torres, Heymer received a limited warranty that expressly applied to "purchases in Europe, the Middle East, and Africa and did not contain an arbitration provision." D.I. 87 at 10-11 (undisputed). In the absence of a limited warranty booklet, Defendant instead relies on the user manual and exterior sticker provided with Heymer's purchase. D.I. 92 at 3. For the same reasons as the Court articulated *supra* with respect to Hanson and Torres, the Court finds that user manual provided in the G30LP box and the exterior sticker did not give Heymer sufficient notice of arbitration.

17

The Court further finds that genuine issues of material fact exist regarding whether Heymer was provided electronic notice on Best Buy's website, where he purchased his G30LP scooter. Defendant has not provided any evidence that its limited warranty and arbitration agreement were available prior to checkout on www.bestbuy.com. In fact, Zhao testified to not having information and knowledge of "whether the limited warranty or arbitration provision was displayed anywhere on" www.bestbuy.com. D.I. 87, Ex. 11, at 84:4-12. Thus, the Court will construe the facts and reasonable inferences in the light most favorable to Heymer and assume that the limited warranty containing an arbitration agreement was not available on www.bestbuy.com when Heymer purchased his G30LP scooter. Given that inference, a reasonable juror could conclude that Heymer did not receive notice of the arbitration agreement on www.bestbuy.com.

Further, Heymer's 2022 purchase of the G30LP KickScooter predates the availability of the limited warranty on the Segway-Ninebot mobile app. Thus, Heymer could not have navigated the mobile app to find the arbitration agreement at the time of his purchase.

For all these reasons, the Court denies Defendant's Motion with respect to Plaintiff Heymer.

## IV.    CONCLUSION

For all the reasons set forth above, the Court GRANTS Defendant's Motion with respect to Plaintiffs Holmes and Sabu, and DENIES Defendant's Motion with prejudice with respect to Plaintiffs Hanson, Torres, and Heymer.

* * *

18

WHEREFORE, this 31st day of July 2026, **IT IS HEREBY ORDERED** that Defendant Segway Inc.'s Motion to Compel Arbitration and Stay All Deadlines and Proceedings (D.I. 39) is **GRANTED** with respect to Plaintiffs Christopher Holmes and Aaron Sabu and **DENIED** with respect to Plaintiffs Paul Hanson, Jimmy Torres, and Edward Steven Heymer. Accordingly, Plaintiffs Christopher Holmes and Aaron Sabu are required to pursue their claims through arbitration. Plaintiffs Paul Hanson, Jimmy Torres, and Edward Steven Heymer may proceed with their respective claims in this action.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

19